[No. 8846.   Department Two.   June 24, 1910.]

E. J. Duhamel *et al., Appellants,* v. Port Angeles Stone Company *et al., Respondents.*[1]

Sales—Contracts—Construction—Delivery—"Require." A contract for the sale of stone of varying thickness and dimensions according to plans and specifications, to be delivered in such quantities as may be "required" not exceeding a specified limit, is not breached by the vendor for want of delivery, where no demand was made specifying the dimensions of the stone; "require" in this instance meaning demanded as of right rather than needed.

Appeal from a judgment of the superior court for King county, Albertson, J., entered March 11, 1910, upon findings in favor of the defendants, after a trial on the merits before the court without a jury, in an action on contract. Affirmed.

*Million & Houser,* for appellants.

*Frank A. Noble* and *McClure & McClure,* for respondents.

Parker, J.—By this action the plaintiffs seek to recover from the defendants damages claimed to have resulted from a failure of the Port Angeles Stone Company to furnish stone for the construction of the United States Post Office

[1]Reported in 109 Pac. 597.

building, in Seattle, in compliance with a contract between the Port Angeles Stone Company and plaintiffs, the latter having the contract for the construction of the building for the United States. The case was tried by the court without a jury, and resulted in findings and judgment in favor of the defendants. The plaintiffs have appealed.

The facts found by the learned trial court, so far as we deem it necessary to notice them, are, in substance, the following: The contract here involved, among other things, provides:

"This indenture made and entered into this 8th day of March, A. D. 1905, by and between the Port Angeles Stone Co., a corporation, party of the first part, and E. J. Duhamel and John Megrath, copartners as Megrath and Duhamel, parties of the second part, Witnesseth:

"Whereas, The parties of the second part have heretofore entered into a contract with the United States Government for the erection and completion of the United States custom house, court house and Postoffice building, in the city of Seattle, and are now engaged in the performance of said contract; and

"Whereas, Under said contract and the specifications for said building as now existing, Chuckanut sandstone is now specified and required for the exterior of all the walls of the building above the granite base, but the party of the second part is endeavoring to obtain a change in said specifications, by which Port Angeles stone, quarried from quarries owned by the parties of the first part, will be substituted for said Chuckanut stone.

"Now Therefore, The party of the first part hereby covenants and agrees to and with the parties of the second part that if said change in said specifications shall be made, it will sell and deliver to the parties of the second part all stone required for the erection and full completion of the exterior of all of the walls of said building above the granite base, as shall be required by the specifications for the erection and construction of said building, being all of the material now shown on said plans and specified in said specifications as now existing as Chuckanut sandstone.

"The said plans and specifications for the said building as now existing and as the same may be hereafter changed and

modified, are hereby declared to be a part of this contract, and in all respects binding upon the party of the first part.

"All of the stone must be delivered on scows or boats at Port Angeles in such quantities as may be required, not to exceed five hundred cubic feet per day. The stone to be equal in all respects to the samples furnished and submitted to the Treasury Department at Washington, and to the satisfaction of the supervising architect.

"The party of the first part shall begin to deliver said stone within thirty days of notice from parties of the second part that the stone has been accepted for said building, and the party of the first part shall continue the delivery of said stone in such quantities as required by the parties of the second part, not exceeding five hundred cubic feet per day, so as to cause no delay in the prosecution of the work of the building. . . ."

On March 9, 1905, in pursuance of the terms of this contract, the Port Angeles Stone Company gave to appellants a bond securing the faithful performance of the contract with the respondent United States Fidelity and Guaranty Company as surety thereon. Thereafter the United States consented to the change in the specifications of the building contract, by which Port Angeles stone was substituted for Chuckanut stone, and on April 5, 1905, appellants duly notified the Port Angeles Stone Company of such change, the contract thereby becoming effective. Immediately thereafter, and until August 4, 1905, the Port Angeles Stone Company kept a large force of men continuously at work at its quarry opening and developing the same. In order that the Port Angeles Stone Company might from time to time comply with the contract it was necessary that the appellants should furnish it with orders specifying the quantities of stone required and the dimensions thereof. The appellants did not require of the Port Angeles Stone Company the shipment or delivery of any stone as provided by the terms of the contract.

On August 1, 1905, appellants entered into a contract with the Chuckanut Stone Company, by which they agreed to purchase from that company stone to be used in the construction

of the building providing the substitution of Chuckanut stone for Port Angeles stone would be consented to by the United States. This change was consented to by the United States, and the building was finally constructed with that stone. The appellants kept the Port Angeles Stone Company in ignorance of their negotiations with the Chuckanut Stone Company, and encouraged the Port Angeles Stone Company to believe that its stone would be used in the construction of the building if there was a reasonable prospect that its quarry could supply stone of sufficient quality and quantity therefor; and there is no satisfactory proof that there was not such reasonable prospect. The Port Angeles Stone Company did not refuse to perform any of the obligations imposed upon it by the terms of the contract. On August 4, 1905, appellants served upon the Port Angeles Stone Company a written notice claiming it was in default under the contract, and that it had failed to deliver stone as agreed, also notifying it, "that because of said default, we will be compelled to purchase stone for the building elsewhere; and you are further notified that because of the facts aforesaid, we hereby terminate said contract, and will hold you responsible in damages (and your surety likewise to the extent of the penalty named in the bond) for such damages as we have suffered and may suffer because of such default, including any greater expense to which we may be put in procuring stone for the building elsewhere." No previous notice of the appellants' intention to terminate the contract was given to the Port Angeles Stone Company. Appellants' claim of damages is based upon the alleged failure of the Port Angeles Stone Company to deliver the stone.

The controlling questions in the case arise upon exceptions to certain findings made by the court, and exceptions to the refusal of the court to make certain requested findings. These all bear upon the general question, Did the Port Angeles Stone Company violate the terms of its contract in not delivering stone prior to August 4, 1905, when it was notified

by appellants of their intention to terminate the contract? If this question is answered in the negative the whole controversy will be disposed of.

It is contended in behalf of the respondents that, under the terms of the contract, the Port Angeles Stone Company was not required to furnish or deliver any stone except upon receiving orders or requisitions therefor from appellants from time to time, specifying the quantities and dimensions of stone required, and that no such orders or requisitions were ever given. On the other hand, it is contended in behalf of appellants, that they did make repeated demands for stone, and that in any event they were not required to give orders or requisitions from time to time as contended by respondents in order to obligate the Port Angeles Stone Company to deliver stone. These contentions present two questions: (1) What demand for stone was made, if any? (2) What demand was necessary under the contract? We will notice these in order.

From a careful reading of the evidence it seems clear to us that appellants never at any time made any order or requisition upon the Port Angeles Stone Company to deliver stone of any particular quantity or of any particular dimensions. The evidence is somewhat in conflict as to appellants making demand of a general nature for the delivery of stone. Mr. Burroughs, the secretary and treasurer of the Port Angeles Stone Company, testified:

"We were urged to get stone as quickly as we could, but admonished not to send any stone until we were positive that we had plenty of stone in sight to complete the building. Q. Who said so? A. Mr. Duhamel. He explained that the reason for that was that if he should start building with our stone and would get it part of the ways up and was not able to complete the building, it would be a disastrous thing for him and us."

At the time of and for a short time following the making of the contract, there seemed to be a possibility of the quarry not being able to furnish stone sufficient in quantity and

quality; it being not very fully developed. This explains the statement of Mr. Burroughs above quoted. It is claimed by respondents that the demands of appellants for the delivery of stone were never more specific than this, and that such demands were all thus qualified. The trial court evidently adopted this view and we think the evidence was such as to fully warrant the court in so doing.

Was the Port Angeles Stone Company bound to deliver any stone except upon demands and requisitions to be made upon it by appellants from time to time, specifying quantities and dimensions they desired? We have seen that the contract provides that,

"All of the stone must be delivered on scows or boats at Port Angeles in such quantities as may be required not to exceed 500 cubic feet per day. . . . The party of the first part shall . . . continue the delivery of said stone in such quantities as required by the parties of the second part."

Looking to the provisions of the contract, unaided by extrinsic evidence, the question of the Port Angeles Stone Company's obligation to make deliveries depends upon the meaning of the word "required" as here used. The word "require" is defined by the Standard Dictionary as follows: "(1) To demand, or to request something of, authoritatively; ask as of right; claim; insist upon; (2) To have imperative need of; render or find indispensable; want." In the case of *Brewster v. Brewster*, 52 N. H. 52, 58, the court observed:

"The verb 'require' is not absolutely the synonym of the verb 'need,' though it is of the verb 'demand.' Crabb's Synonyms, 228. Although the verb *require* may, undoubtedly, be properly used in the sense of the verb *need*, such is not its primary nor its usual signification. It comes from the Latin *requiro*, compounded of *re* and *quoero*—to seek for, or to seek to get back. It means, according to all lexicographers, and in very common parlance, to *demand*; or, as Webster defines it, to ask as of right and by authority."

In that case the word was used in an instrument providing for the payment of interest upon a certain sum to a certain

person during her life.   The instrument also providing, "The principal to be paid to her when she may require it."   The following authorities support the view that "require" as here used means demand or request rather than merely need.   *Mc-Reynold's Appeal*, 66 Pa. St. 102; *Meagher v. Van Zant*, 18 Nev. 230, 2 Pac. 57; *People v. Central Pac. R. Co.*, 76 Cal. 29, 18 Pac. 90; *United States v. Dimmick*, 112 Fed. 350; *Hanson v. Maverick Oil Co.*, 67 N. H. 201, 29 Atl. 459; *Allen v. Allen*, 116 Iowa 697, 88 N. W. 1091.

The circumstances surrounding the making of this contract, showing the manner in which the parties contemplated this stone should be furnished, also lends support to this view.   It is apparent from the evidence that this stone was to be sawed into varying thickness according to the dimensions provided in the building specifications; that is, the Port Angeles Stone Company was to prepare the stone at its quarry, and deliver it, in varying thickness and dimensions.   Among other things testified to by Mr. Burroughs is the following:

"Q.   State what is the fact in regard to your receiving any of such orders or directions to deliver any stone at all. A.   We never received any instructions to deliver any stone—never an order.   Do you want me to say anything further?   Q. Not unless it will be in answer to the question—   A. (Continuing) The only matter taken up whatever regarding that was soon after the contract was signed, while I was at the office of Megrath & Duhamel, Mr. Duhamel told me to go into the back room of his office with Mr. McAllister and go over the plans, and get an understanding as to the plans.   Mr. Mc-Allister then stated that whenever he should call for course A or course B and so forth, we would understand from that practically what he wanted, and at that time he gave me to understand what course A and B meant, and how we would understand whether the stone for that course was to be sawed across the bed or with the bed."

Certain testimony given by Mr. Duhamel relating to the dimensions of stone to be delivered is not inconsistent with this.   Mr. Burroughs also testified that no plans were fur-

nished the Port Angeles Stone Company by appellants. We think, under the terms of the contract and all of the circumstances shown, the learned trial court was warranted in concluding that the Port Angeles Stone Company was not obligated to deliver stone except upon orders or requisitions. from the appellants specifying quantities and dimensions required, and that appellants never gave such orders or requisitions prior to giving notice of their intention to terminate the contract; and that therefore the Port Angeles Stone Company did not fail or refuse to perform any of its obligations under the agreement.

We are of the opinion that the cause was rightly determined. The judgment is affirmed.

RUDKIN, C. J., MOUNT, CROW, and DUNBAR, JJ., concur..