[No. 29307. Department Two. November 30, 1944.]

WESTERN GAS COMPANY OF WASHINGTON, *Appellant,* v. THE CITY OF BREMERTON, *Respondent.*[1]

[1] Reported in 153 P. (2d) 846.

H. E. Gorman (Herbert O'Hare, of counsel), for appellant.

James W. Bryan, Jr., and John C. Merkel, for respondent.

MALLERY, J.—The plaintiff, appellant herein, the Western Gas Company of Washington, is a domestic corporation, and the defendant, respondent herein, is the city of Bremerton. The parties will be referred to hereinafter as the "company" and the "city."

The company is party to a fifty-year city franchise based on city ordinance No. 912 adopted by the city commissioners of the city on April 6, 1930, a fifty-year county franchise based on resolution of the county commissioners of Kitsap county (hereinafter referred to as the "county") adopted January 5, 1931, and another twenty-five-year county franchise based on resolution of the county commissioners adopted December 16, 1940. The company is either the named grantee or an assignee of the above franchises.

The company brought suit for a declaratory judgment to determine its rights and obligations under the above franchises. From a judgment in favor of the city, the company appeals.

One of the questions herein arose out of the fact that, subsequent to the granting of the county franchises, the city has extended its limits by annexing territory in which the company was either operating or had a right to operate under its county franchise. The questions involve the extent of the company's obligation to pay two per cent of its gross revenue to the city as provided by its city franchise, and its obligation to re-lay, at its own expense, the gas pipes disturbed by changes in the grade of streets prescribed by the city.

Upon the first question, the company contends that: (1) As to annexed territory in which it had no franchise from

the county, by implied agreement under its city franchise, it has the right to operate therein, and thereupon is obligated to pay to the city the required percentage of its gross revenue derived therefrom; (2) as to annexed territory in which it had a county franchise, there is no such implied agreement, and the county franchise is not abrogated, superseded, or extinguished, and hence its right to operate under it without such payment cannot be taken away.

■ As to the first proposition, it is undoubtedly true that the company has the right to extend its operations into the annexed territory under the terms and conditions of its city franchise. This is for the reason that, where new territory is brought within a city, its ordinances are immediately in effect in the new as well as in the old territory, without the necessity of express legislation to that effect. Thus, the company's contention is correct, but not for the reason given—that there is an implied contract to that effect. On the contrary, the city's right to govern the new territory is not based upon a contractual relationship with persons owning property therein, but is an attribute of governmental power granted to the municipality by the state.

■ The county did not have the power to prevent the exercise of the city's authorized functions in such territory as from time to time may be annexed to the city. Obviously, the authority over franchises of this character cannot be exercised by both the county and the city simultaneously. The authority of the city supersedes that of the county upon annexation, and thereafter the county franchise is terminated as to the new territory. See *Peterson v. Tacoma R. & P. Co.*, 60 Wash. 406, 111 Pac. 338; *State ex rel. Dennison v. Seattle R. & S. R. Co.*, 64 Wash. 167, 116 Pac. 638; *Ettor v. Tacoma*, 77 Wash. 267, 137 Pac. 820.

The company will be obligated to pay the required percentage of its gross revenues derived from all its operations within the city.

■ The company's other contention is that it is entitled to "damages" from the city to the extent of the expense in-

curred in re-laying its pipes when necessitated by changes in street grades made upon the authority of the city.

The principle of *damnum absque injuria* is an ancient one. It is applicable here. The city is not guilty of any tort; no wrongful act is being done. The necessity and convenience of the public is being served. No property is taken; no title is disturbed. The authorities are well-nigh unanimous that in such a case the city has a paramount right to serve the public necessity and convenience without payment for individual losses resulting therefrom. Many roadside businesses have been destroyed by the rerouting of traffic or changes in the location of streets and highways.

The paramount right of the city, in such a case as this, precludes the availability of any remedy to the company. *Damnum absque injuria.* See 18 Am. Jur. 792, § 161; 28 C. J. 553, § 11; 38 C. J. S. 636, § 12; 38 Am. Jur. 234, § 548.

The judgment is affirmed.

SIMPSON, C. J., BEALS, BLAKE, and ROBINSON, JJ., concur.

[1]Reported in 153 P. (2d) 886.