[No. 31381. Department One. February 23, 1951.]

EVERGREEN TRAILWAYS, INC., *Appellant*, v. THE CITY OF RENTON, *Respondent*.[1]

[1]Reported in 228 P. (2d) 119.

*Emory, Howe, Davis & Riese,* for appellant.

*Arthur L. Haugan, Weter, Roberts & Shefelman,* and *Victor D. Lawrence,* for respondent.

SCHWELLENBACH, C. J.—Evergreen Trailways, Inc., and its predecessor in interest have, since 1921, been operating a transportation business between Seattle and Nine Mile Bridge (nine miles east of North Bend), under certificate of public convenience and necessity No. 100, issued by the public service commission. Since 1942, Evergreen has been conducting a turn-around service between Issaquah, Preston, High Point, Honey Creek, Renton Heights, Renton Highlands, Renton, and Seattle. Because of war work, a housing project was installed at Renton Highlands, two miles east of Renton, and it became quite a thriving community. As a result, and because of increased demand, Evergreen increased its turn-around schedules from five or six to eighteen or nineteen a day. Its business between Highlands and Renton was quite profitable.

In March, 1945, the city of Renton, a second-class city, enlarged its city limits by annexation to include Renton Highlands. In September, 1948, the city passed ordinance No. 1323, which provided that it should be unlawful for any person, firm, or corporation to engage in the business of transporting persons for hire, on or over the streets of Renton, in intracity hauling, without first obtaining a fran-

chise so to do. The ordinance also provided for a fine or jail sentence upon conviction for a violation thereof.

April 6, 1949, Evergreen applied to Renton for a franchise. The application was refused, and a franchise was granted to another corporation. Evergreen continued to transport passengers between Highlands and original Renton. The city attempted to enforce ordinance No. 1323 by threatening to arrest Evergreen drivers. This action was commenced to enjoin the city from enforcing the ordinance, and a temporary restraining order was issued. After a hearing, the trial court dissolved the temporary restraining order and dismissed the action. This appeal follows.

Two grounds are urged for reversal of the decree: (1) that ordinance 1323 is invalid because it is in direct conflict with the public service commission laws of the state; and (2) that respondent may not, by process of annexation, deprive appellant of valuable property rights granted it by the state.

"Municipal corporations are commonly given power to regulate the use of their streets and sidewalks, or more specifically, the vehicles used thereon, and reasonable regulations in respect to the operation of vehicles aimed at preserving the safety, welfare and convenience of the public are clearly valid. . . ." 37 Am. Jur. 969, Municipal Corporations, § 314.

Art. XI, § 11, of the state constitution provides that any city may make and enforce within its limits all such local police, sanitary, and other regulations as are not in conflict with general laws. It was held in *Detamore v. Hindley,* 83 Wash. 322, 145 Pac. 462, that this is a direct delegation of the police power, as ample within its limits as that possessed by the legislature itself; that it requires no legislative sanction for its exercise so long as the subject matter is local and the regulation reasonable and consistent with the general laws. However, Rem. Rev. Stat., § 9034, subsection 40 [P.P.C. § 379-57], gives to cities of the second class power to permit the use of their streets for railroad or other public purposes. Furthermore, the act providing for passenger transportation by motor vehicles defines an auto transpor-

tation company in Rem. Rev. Stat., Vol. 7A (Sup.), § 6387 (d) [P.P.C. § 282-1]:

"(d) The term 'auto transportation company' when used in this act means every corporation or person, their lessees, trustees, receivers or trustees appointed by any court whatsoever, owning, controlling, operating or managing any motor propelled vehicle not usually operated on or over rails used in the business of transporting persons, and, or, property for compensation over any public highway in this state *between fixed termini or over a regular route, and not operating exclusively within the incorporated limits of any city or town: . . .*" (Italics ours.)

It would thus appear that the legislature did not attempt to regulate the transportation of passengers by motor vehicles operating exclusively within the incorporated limits of any city or town, but left such regulation to the cities or towns if they so desired.

In *In re Sound Transit Co.*, 119 Wash. 684, 206 Pac. 931, relative to the use of the streets of a city by motor propelled vehicle for hire, we said:

" 'But the use to which the appellant purposes putting streets is not their ordinary or customary use, but a special one. He purposes using them for the transportation of passengers for hire, a use for which they are not primarily constructed. As to such users we think the power of the municipality is plenary, in so far as this particular clause of the statute is concerned. It denies no form of regulation pertaining to business of this character, even to the prohibition of the business entirely.' (*Allen v. Bellingham,* 95 Wash. 12, 163 Pac. 18.)

"Before we hold that the legislature has taken from the city the power to regulate and control the use of its streets, it will be necessary for the legislature to pass an act to that effect which makes its meaning plain and unequivocal. . . ."

■ We hold that the constitution grants to cities, under the police power, the right to regulate the use of their streets with respect to the transportation of passengers for hire by motor busses, unless such power is taken from them by legislative enactment, and that the legislature has not taken such power away from them.

■ Any portion of a county not theretofore incorporated as a city or town lying contiguous to a city or town may become annexed to such city or town and, when so annexed, shall become a part thereof. Rem. Supp. 1945, § 8908-10. When territory is annexed to a city, the authority of the city *ipso facto* extends over the new territory, and it becomes subject to the control and supervision of the municipal authority. *Ettor v. Tacoma,* 77 Wash. 267, 137 Pac. 820; *Western Gas Co. v. Bremerton,* 21 Wn. (2d) 907, 153 P. (2d) 846; 37 Am. Jur. 651, Municipal Corporations, § 34.

■ Immediately upon the annexation of Renton Highlands becoming effective, the right of the city of Renton to regulate the use of its streets with respect to transportation for hire, extended to the area annexed. We find no conflict of jurisdiction between the state and the city. The state still has jurisdiction over the transportation of persons for compensation over any public highway through Renton, and between fixed termini or over a regular route. The city, under its police power, has jurisdiction to regulate the use of its streets for the transportation of passengers for hire, operated exclusively within the city's corporate limits. The action of the city in requiring a franchise to haul passengers for hire over its streets in intracity hauling did not take from appellant any rights that it theretofore had.

The judgment is affirmed.

BEALS, HILL, HAMLEY, and DONWORTH, JJ., concur.