[No. 10288–5–I.   Division One.   April 18, 1983.]

RALPH E. MOORE, *Appellant,* v. PACIFIC NORTHWEST BELL, ET AL, *Respondents.*

*Richard C. Kimberly,* for appellant.

*Corey Ford* and *William Johnston,* for respondents.

RINGOLD, J.—The plaintiff, Ralph Moore, appeals dismissal of his complaint against Pacific Northwest Bell (PNB) for negligent transfer of the telephone number he used in his taxicab business. We find that the court had jurisdiction of the subject matter and that genuine issues of material fact were presented, and therefore reverse.

Moore alleged the following facts. Moore, Peggy Harris, and Bill Campbell were partners doing business as Taxi Service, formed to dispatch telephone calls to themselves as taxicab operators. PNB assigned Taxi Service the number 734–5078 and listed the three partners in its business records as persons responsible for payment of charges. Harris subsequently sold her taxicab to Daniel Stroud, and the dispatch service and telephone were moved to Stroud's home. Stroud then sold the taxicab to Jack Johnson. PNB transferred the Taxi Service telephone number to Johnson at his and Stroud's request. Moore brought an action against Stroud and Johnson for wrongful conversion and against PNB for negligent reassignment of 734–5078, seeking damages for lost business revenue and the right to exclusive use of the telephone number.

In its answers to Moore's interrogatories PNB stated that

Harris informed it she had sold Taxi Service to Stroud, "that he now owned all the business," and had the authority to authorize transfer of the telephone number. PNB also stated that it was on the basis of Harris' representation of Stroud's ownership and its own interview of Stroud that it "superceded" the Taxi Service number to Johnson, making him responsible for payment of charges.

PNB moved for summary judgment, asserting that the Washington Utilities and Transportation Commission (WUTC) had "exclusive jurisdiction" over the subject matter of the action and that its tariffs completely barred recovery. The trial court orally granted the summary judgment motion. In support of his motion for reconsideration Moore proffered Harris' affidavit averring that she sold only her taxicab to Stroud and that her "interest in Taxi Service and the telephone number 734–5078 inured to Ralph Moore and Bill Campbell at the time she sold her cab and quit the business." The trial court denied Moore's motion for reconsideration, and entered a summary judgment of dismissal.

## JURISDICTION

Moore first assigns error to the trial court's conclusion that it had no subject matter jurisdiction over his claim. He relies on RCW 80.04.440, which provides that regulated public service companies are liable for damages caused by them and are amenable to suit in court.[1] PNB responds by characterizing Moore's negligence claim as one of "unjust"

---

[1] RCW 80.04.440 states:

"In case any public service company shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done, either by any law of this state, by this title or by any order or rule of the commission, such public service company shall be liable to the persons or corporations affected thereby for all loss, damage or injury caused thereby or resulting therefrom, and in case of recovery if the court shall find that such act or omission was wilful, it may, in its discretion, fix a reasonable counsel or attorney's fee, which shall be taxed and collected as part of the costs in the case. An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any person or corporation."

and "unreasonable" telephone service cognizable only in an administrative hearing before the Washington Utilities and Transportation Commission. RCW 80.36.140 proscribes "unjust or unreasonable" practices in the provision of telephone services and authorizes the WUTC, after a hearing, to order changes in company practices.[2] The WUTC is not authorized, however, to award damages for losses caused by such practices.

PNB argued the WUTC's "exclusive jurisdiction" over Moore's claim in its brief, but in oral argument directed its remarks toward demonstrating WUTC's primary jurisdiction. Any interpretation of RCW 80.36.140 vesting exclusive jurisdiction in the WUTC would violate article 4, section 6 of the Washington State Constitution. *Blanchard v. Golden Age Brewing Co.,* 188 Wash. 396, 63 P.2d 397 (1936). The judicial power under this article is plenary, vesting in the superior courts "original jurisdiction in all cases and of all proceedings in which jurisdiction shall not have been by law vested exclusively in some other court; . . ."

■ The doctrine of primary jurisdiction was developed to guide courts in determining whether to refrain from exercising jurisdiction pending resolution of the matter by an administrative agency with special competence. *In re Real Estate Brokerage Antitrust Litig.,* 95 Wn.2d 297, 622

---

[2]RCW 80.36.140 reads in pertinent part:

"Whenever the commission shall find, after a hearing had upon its own motion or upon complaint . . . that the rules, regulations or practices of any telegraph company or telephone company affecting such rates, charges, tolls, rentals or service are unjust, unreasonable, unjustly discriminatory or unduly preferential, or in anywise in violation of law, or that such rates, charges, tolls or rentals are insufficient to yield reasonable compensation for the service rendered, the commission shall determine the just and reasonable rates, charges, tolls or rentals to be thereafter observed and in force, and fix the same by order as provided in this title.

"Whenever the commission shall find, after such hearing that the rules, regulations or practices of any telegraph company or telephone company are unjust or unreasonable, . . . the commission shall determine the just, reasonable, proper, adequate and efficient rules, regulations, practices, equipment, facilities and service to be thereafter installed, observed and used, and fix the same by order or rule as provided in this title."

P.2d 1185 (1980); K. Davis, *Administrative Law Text* §
19.01 (3d ed. 1972). The agency must be part of a pervasive
regulatory scheme and have special competence over issues
presented in the claim. *Real Estate.* Even if endowed with
special expertise, an agency should not be accorded primary
jurisdiction if it is powerless to grant the relief requested.
*Real Estate; S.S. Kresge Co. v. Port of Longview,* 18 Wn.
App. 805, 573 P.2d 1336 (1977), *review granted,* 90 Wn.2d
1004 (1978), *dismissed* October 4, 1978. The doctrine does
not strip the courts of their power, being merely discretion-
ary and premised on an attitude of judicial self–restraint.
*Casey v. FTC,* 578 F.2d 793 (9th Cir. 1978); *Real Estate;
Kerr v. Department of Game,* 14 Wn. App. 427, 542 P.2d
467 (1975), *review denied,* 86 Wn.2d 1013 (1976).

Application of the doctrine of primary jurisdiction is
inappropriate here because the WUTC has neither the
power to grant the relief Moore requested nor special com-
petence over the subject of his claim. The basis of Moore's
claim is PNB's negligence in transferring the telephone
number without proper authorization, a matter suited to
the exercise of judicial rather than administrative expertise.

▮ PNB's contention that Moore's negligence claim
alleges "unjust and unreasonable" practices is not well
taken. Whether a practice is unjust and unreasonable under
RCW 80.36.140 is determined by a standard different from
that used by a judicial trier of the fact to conclude that a
party's conduct was negligent. Negligence embraces more
than unreasonable action, requiring proof of breach of a
duty proximately causing injury. *Jurgens v. American
Legion, Cashmere Post 64, Inc.,* 1 Wn. App. 39, 459 P.2d 79
(1969).

PNB places great reliance on *Robinson v. Pacific Tel. &
Tel. Co.,* 118 Wash. 318, 203 P. 1 (1922) for its contention
that the trial court had no jurisdiction over Moore's negli-
gence claim. In *Robinson* a telephone customer sought relief
in damages for the annoyance, inconvenience, and loss of
revenue he suffered over a 3–year period as a result of the
company's erroneous transmission of calls to his office. The

court determined that the complaint in reality was one for unreasonable and unjust business practices, and reached the rather extreme conclusion that jurisdiction was exclusively in the WUTC under Rem. 1915 Code § 8626, predecessor of RCW 80.36.140. The court stated:

> Being of the opinion that appellant's pleaded claims present, in their last analysis, only questions of alleged "unjust" and "unreasonable" practices on the part of respondent as against appellant, spreading continuously over such a long period of time, within the meaning of § 8626, Rem. Code, and it appearing that that and other sections of our public service law require that remedy for such wrongs be sought in the first instance through complaint and application to our public service commission, we conclude that appellant's complaint does not state facts entitling him to relief, as prayed for, at the hands of the courts.

*Robinson,* at 320.

Aside from being out of accord with the prevailing view of administrative jurisdiction, *Robinson* is distinguishable from this case. *Robinson* dealt with an activity by the telephone company which continued unabated over 3 years. The offensive conduct in *Robinson* is therefore more easily characterized as a "practice" within RCW 80.36.140 than is the single, isolated act of unauthorized supercedure alleged to have been negligent here.

The weight of authority contradicts the analysis in *Robinson* and compels the conclusion that the trial court had jurisdiction over Moore's claim. In *Jeffries v. Glacier State Tel. Co.,* 604 P.2d 4 (Alaska 1979) the Alaska Supreme Court rejected a telephone company contention that under a statute paralleling RCW 80.36.140 its utilities commission had jurisdiction over a negligence claim, and delineated the authority of the commission in such actions:

> When a disgruntled phone subscriber seeks to recover damages for inadequate telephone service which is common to the public, we believe that the complaint may properly be referred to the Public Utilities Commission for exercise of primary jurisdiction. Pursuant to its authority to prescribe "just and reasonable standards

. . . and practices" to be observed in furnishing services and facilities, and its authority to hear complaints, the Commission may determine ("find") whether the public utility's service or facilities meet the Commission's standards of reasonableness and adequacy. . . . *When, however, a phone customer alleges that he has suffered from acts or omissions of the utility which result in inadequate service which is different from that provided to the public as a whole, the complaint should be handled as a traditional common law action,* and the superior court should determine the issues in accordance with settled principles of tort liability.

(Footnotes omitted. Italics ours.) *Jeffries,* at 10.

This distinction between tortious injury unique to one and unreasonable practices suffered by all is consistent with the approach taken by other courts. In *B & W Rustproofing, Inc. v. Michigan Bell Tel. Co.,* 88 Mich. App. 242, 276 N.W.2d 572 (1979), a telephone customer alleged that the company had negligently failed to transfer calls to and to list his new telephone number. The court held that exclusive jurisdiction did not lie with the commission because "the complaint alleges tortious conduct on the part of defendant [and] it was properly brought in circuit court." *B & W,* at 245. The New York court in *Meyerson v. New York Tel. Co.,* 65 Misc. 2d 693, 318 N.Y.S.2d 900 (1971) distinguished between a complaint of a tortious "individual act or omission" and one alleging "breakdown or impairment of telephone service generally" which "necessarily involves consideration of a technical complex of factors properly coming at least in the first instance, within the administrative purview . . ." *Meyerson,* at 695. Other authority is in accord. *See, e.g., Valentine v. Michigan Bell Tel. Co.,* 388 Mich. 19, 199 N.W.2d 182 (1972); *Southern Bell Tel. & Tel. Co. v. Mobile Am. Corp.,* 291 So. 2d 199 (Fla. 1974).

Moore alleged a single tortious act or omission resulting in inadequate service different from that experienced by the rest of the public, *Jeffries; Meyerson.* Resolution of his claim requires exercise of judicial skills and remedies rather

than administrative expertise. *Real Estate.* As the Pennsylvania court stated in *Behrend v. Bell Tel. Co.,* 242 Pa. Super. 47, 363 A.2d 1152 (1976):

> This is an action for damages and the fact that the regulation of utility service is exclusively in the PUC's jurisdiction does not remove from the court's jurisdiction an action for damages based on a failure of service, any more than the PUC's power to promulgate safety regulations prohibits the courts from hearing a claim for personal injuries resulting from unsafe utility equipment.

*Behrend,* at 58–59. The court had jurisdiction over Moore's claim and erred in concluding otherwise.

## DISMISSAL BASED ON TARIFFS

As a public utility regulated under RCW 80.01.040, PNB is required to file with the WUTC its "schedules showing the rates, tolls, rentals, contracts and charges . . . for . . . services rendered". RCW 80.36.100; *Allen v. General Tel. Co.,* 20 Wn. App. 144, 578 P.2d 1333 (1978). These tariff schedules have the force of law and bind telephone customers. *Allen.*

PNB argues that, even assuming the court had jurisdiction, dismissal was proper because its tariffs preclude Moore from maintaining a suit for negligent transfer of the telephone number under any set of facts. The tariffs to which PNB refers in its brief and in oral argument do not appear in the record, and were cited to the trial court only in PNB's memorandum in support of dismissal. A court reviewing a dismissal on summary judgment is confined to examining the record properly before the trial court. *Leland v. Frogge,* 71 Wn.2d 197, 427 P.2d 724 (1967); *Falcone v. Perry,* 68 Wn.2d 909, 416 P.2d 690 (1966). Matters appearing in the briefs or adverted to during oral argument but not contained in the record on appeal cannot be considered. *See Redmond v. Kezner,* 10 Wn. App. 332, 517 P.2d 625 (1973). The tariffs to which PNB refers were not before the trial court and are not contained in the record on appeal. They cannot be considered in our review of the judgment of dismissal.

SUMMARY JUDGMENT

■ The summary judgment procedure is designed to avoid useless trials. Where there is a genuine issue as to any material fact, however, a trial is not useless, but is absolutely necessary. *Balise v. Underwood*, 62 Wn.2d 195, 381 P.2d 966 (1963).

The evidence presented material issues of evidentiary and ultimate fact. Precisely what Harris told PNB after she sold her taxicab to Stroud is an evidentiary fact in issue. PNB contends she informed it that Stroud had purchased Taxi Service in its entirety and therefore had full authority to transfer the number. Harris stated in her affidavit that Stroud purchased only her taxicab, not the entire partnership. Beyond evidentiary facts, the ultimate fact of PNB's alleged negligence was in issue. Summary judgment was therefore improper. *Preston v. Duncan*, 55 Wn.2d 678, 349 P.2d 605 (1960).

The judgment of dismissal is reversed and the case remanded for further proceedings.

SWANSON and SCHOLFIELD, JJ., concur.

Reconsideration denied May 24, 1983.

Review denied by Supreme Court August 12, 1983.