[No. 51433-0. En Banc. April 3, 1986.]

GENERAL TELEPHONE COMPANY OF THE NORTHWEST, INC., *Petitioner,* v. THE CITY OF BOTHELL, ET AL, *Respondents.*

THE CITY OF REDMOND, *Respondent,* v. GENERAL TELEPHONE COMPANY OF THE NORTHWEST, INC., *Petitioner.*

GENERAL TELEPHONE COMPANY OF THE NORTHWEST, INC., *Petitioner,* v. THE CITY OF REDMOND, ET AL, *Respondents.*

*Robert P. Tjossem* and *David J. Smith* (of *Livengood, Silvernale, Carter & Tjossem*), for petitioner.

*Ogden, Ogden & Murphy,* by *Wayne D. Tanaka,* for respondents.

*William S. Weaver, John Daniel Ballbach,* and *Frederic A. Morris* on behalf of Puget Sound Power and Light Co. and *James F. Fell* on behalf of Pacific Power and Light

Co., amici curiae for petitioner.

*Alan J. Gardner* on behalf of Pacific Northwest Bell; *Kenneth O. Eikenberry, Attorney General,* and *Larry V. Rogers, Assistant,* amici curiae.

ANDERSEN, J.—

FACTS OF CASE

At issue in this case is whether a public utility's tariff preempts contradictory provisions of subsequently enacted city ordinances.

On May 5, 1971, the Washington Utilities and Transportation Commission (WUTC) adopted WAC 480–120–076, which provides that "[e]ach telephone utility shall set forth in its tariff its conditions for providing underground facilities." In 1972, General filed a tariff requiring a customer requesting underground facilities to pay the difference in cost between installing aerial and underground facilities. In 1977, General amended its tariff to pass the costs of relocating aerial facilities underground on to "the owners of real property served along the route of the constructed facility or to others requesting such relocation construction."

On March 16, 1981, the City of Bothell enacted ordinance 999, granting General a 10–year franchise to maintain a general telephone system in Bothell. The ordinance notes initially that General, as the successor to West Coast Telephone Company, had been operating under the terms of the now–expired West Coast franchise. Ordinance 999 then refers to Bothell's policy of relocating aerial electrical and communication facilities underground for reasons of safety and aesthetics, and provides that whenever a public right of way is improved, existing poles and related facilities are to be undergrounded at General's expense.

On March 15, 1982, Bothell enacted ordinance 1039 providing for the improvement of specific streets to promote the public health, safety and welfare as well as aesthetic values. Section 3 orders General to underground existing

aerial facilities along the improved streets and also orders it to bear the costs of such relocation.

Bothell then instructed General to underground its facilities along the streets identified in ordinance 1039. General declined to do so and filed a declaratory judgment action in King County Superior Court, challenging both ordinances 999 and 1039. Bothell counterclaimed and sought an order requiring General to underground its facilities at General's expense. The trial court granted General's motion for summary judgment, holding that General's tariff conflicted with and preempted Bothell's ordinances.

A similar sequence of events occurred in Redmond. On March 31, 1981, Redmond enacted an ordinance granting General a franchise, again on the condition that the utility pay for undergrounding its aerial facilities along public rights of way as they were improved. After General refused to comply with the ordinance, Redmond filed an action in the Superior Court seeking to compel compliance. General filed a separate action challenging the ordinance. The two actions were consolidated, and in that consolidated case another judge held that General's tariff also conflicted with and preempted Redmond's ordinance.

Both Redmond and Bothell appealed. The Court of Appeals consolidated the appeals and reversed both trial courts, holding that General's tariff did not preempt the ordinances because it was invalid.[1] The Court of Appeals also held that the Bothell ordinances were a valid exercise of the police power, and granted the Cities' motions for summary judgment.

General then petitioned this court and we granted discretionary review.[2]

There are two issues.

## ISSUES

ISSUE ONE. Is a city ordinance valid that conflicts with a

---

[1] *General Tel. Co. v. Bothell*, 39 Wn. App. 453, 458, 693 P.2d 215 (1985).

[2] RAP 13.4(b).

preexisting tariff adopted by a utility pursuant to authority lawfully granted by the Washington Utilities and Transportation Commission?

ISSUE TWO. Does a tariff that imposes undergrounding costs on a city result in a gift of city funds in violation of Washington Const. art. 8, § 7?

DECISION

ISSUE ONE.

CONCLUSION. Pursuant to state statute, RCW 80.01-.040(3), the WUTC has authority to regulate the facilities and practices of a utility. Tariffs enacted pursuant to such WUTC regulation have the force of state law and are preemptive authority over subsequently enacted city ordinances.

Only the facts of the Bothell case need be discussed here since our resolution of that case is dispositive of the Redmond case.

By way of background, it is, of course, the general rule in this state and elsewhere that "public utility companies operating under a franchise must bear the cost of removing and of relocating their facilities, as it is made necessary by highway improvements."[3] A qualification of this rule, however, is that "the common–law duty of a utility to relocate its facilities at its own expense when public convenience or necessity so requires may be changed by contract between the utility and a municipality so that relocation expenses are borne by the municipality, or may be changed by statute so that relocation expenses in certain cases are borne by the state, or the municipality." (Footnotes omitted.)[4]

The first question in connection with this issue is whether the tariff and the ordinances conflict. Section 6 of

---

[3]*State v. PUD 1*, 55 Wn.2d 645, 650–51, 349 P.2d 426 (1960); 12 E. McQuillin, *Municipal Corporations* § 34.77, at 188 (3d ed. 1970).

[4]12 E. McQuillin, *Municipal Corporations* § 34.74(a), at 183–84 (3d ed. 1970), 20 (1984 Cum. Supp.); *see also State Hwy. Comm'n v. Arkansas Power & Light Co.*, 235 Ark. 277, 359 S.W.2d 441 (1962).

ordinance 999 and section 3 of ordinance 1039 require General to underground its existing facilities at its own expense. General's prior tariff provides that if the utility is requested or required by law to place its aerial facilities underground, the costs of such placement shall be passed on to owners of real property served along the route or to others *requesting* the relocation. The tariff does not expressly state that costs pass to the entity *requiring* undergrounding. Bothell is such an entity and argues that, accordingly, it is not required to bear the undergrounding costs under General's tariff.

Bothell's attempt to harmonize these laws rests on too narrow an interpretation of "requesting".[5] The effect of its ordinances is clearly to require General to pay for undergrounding while the tariff as clearly requires the costs to be passed on to another party. Despite Bothell's argument, the City is both requesting and requiring undergrounding, and the tariff and ordinances thus contain contradictory terms.

The question therefore becomes which law has precedence over the other. Franchises have the legal status of contracts.[6] The power to grant franchises is a sovereign power that rests in the state, but which may be delegated to cities.[7] Washington municipalities may grant franchises to telephone companies under RCW 35.22.280(7), RCW 35.24.290(10), and RCW 35A.47.040.

Despite their status as contracts, franchises must yield to a municipality's police power if it be reasonably exercised to attain reasonable ends.[8] Cities exercise such power, again due to a grant of authority from the State under Const. art. 11, § 11, which provides that any city may make

---

[5]This court found "request" synonymous with "require" in *Duhamel v. Port Angeles Stone Co.*, 59 Wash. 171, 176–77, 109 P. 597 (1910). *See also Roget's International Thesaurus* § 751.4, at 501 (3d ed. 1962).

[6]*Tukwila v. Seattle*, 68 Wn.2d 611, 615, 414 P.2d 597 (1966).

[7]*Neils v. Seattle*, 185 Wash. 269, 274–75, 53 P.2d 848 (1936).

[8]*Tukwila*, at 615.

and enforce within its limits all such local police, sanitary and other regulations as are not in conflict with general laws.[9]

Some of the general laws referred to in Const. art. 11, § 11 may be promulgated by the WUTC, which also has been delegated authority to regulate public utilities. Under RCW 80.01.040, the WUTC may regulate the rates, services, facilities and practices of telephone companies.[10] Pursuant to that authority, the WUTC promulgated WAC 480–120–076, which allows each telephone utility to set forth terms in its tariff for providing underground facilities.

■ Once a utility's tariff is filed and approved, it has the force and effect of law.[11] Acting pursuant to WAC 480–120–076, General filed a tariff on May 24, 1977. The tariff was not contested by the WUTC or others and became effective on June 25, 1977.

The Court of Appeals held that this would have been a valid tariff except for the fact that it abrogated terms contained in General's franchise agreement with Bothell.[12] To "abrogate" is "to abolish by authoritative, official or formal action: annul, repeal".[13] The Bothell franchise ordinance was not enacted until 1981, some 4 years after the effective date of the tariff. Thus, the 1977 tariff did not repeal or otherwise abrogate the franchise ordinance.

The Court of Appeals analyzed Bothell's ordinance 999 as both a contractual and a police power exercise; an analysis General contends was erroneous. Because of the conflict between the tariff and the undergrounding provisions of the later Bothell ordinance, however, the ordinance is flawed no

---

[9]*Evergreen Trailways, Inc. v. Renton,* 38 Wn.2d 82, 84, 228 P.2d 119 (1951).

[10]RCW 80.01.040(3).

[11]*Moore v. Pacific Northwest Bell,* 34 Wn. App. 448, 455, 662 P.2d 398 (1983); *Allen v. General Tel. Co.,* 20 Wn. App. 144, 151, 578 P.2d 1333 (1978).

[12]*Bothell,* at 458.

[13]*Webster's Third New International Dictionary* 6 (1971).

matter what nomenclature is used.

 Ordinance 999 does not constitute a valid contract because its terms were never fully accepted by General.[14] Until both parties accept the terms of a franchise, it lacks the essentials of a contract; it is a mere proposition.[15] After a franchise expires, a utility normally is allowed time to negotiate an extension or renewal.[16] "The city cannot . . . compel the company to accept its terms for the continued occupation of the streets."[17] General never accepted the undergrounding provisions of ordinance 999 so as to those provisions it never became more than a proposition. The ordinance also fails as a contract because the laws which exist at the time and place of making a contract are to form part of it.[18] General's tariff had the force of state law by the time ordinance 999 was enacted. Bothell thus tried to compel General to accept a franchise that ignored rather than included existing law.

 Neither of Bothell's ordinances fares any better as a police power exercise. A city cannot, under the pretense of regulation as an exercise of its police power, force a contract upon the grantee.[19] Furthermore, a city's right to enact police power regulations in a given area ceases when the WUTC passes a general law concerning the same area

---

[14]*See* 12 E. McQuillin, *Municipal Corporations* § 34.06, at 19 (3d ed. 1970); *Oak Harbor v. Public Utils. Comm'n*, 99 Ohio St. 275, 280, 124 N.E. 158 (1919).

[15]12 E. McQuillin, § 34.06, at 19; *Zanesville v. Ohio Fuel Gas Co.*, 64 Ohio App. 440, 444, 28 N.E.2d 949, 951 (1940).

[16]12 E. McQuillin, § 34.51, at 138; *see Detroit v. Detroit United Ry.*, 172 Mich. 136, 137 N.W. 645 (1912).

[17]12 E. McQuillin, § 34.51, at 137; *Detroit*, at 155–56.

[18]5 E. McQuillin, *Municipal Corporations* § 19.42, at 464 (3d ed. 1981); *Edwards v. Kearzey*, 96 U.S. 595, 601, 24 L. Ed. 793 (1877).

[19]12 E. McQuillin, § 34.74, at 180; *Wright v. Glen Tel. Co.*, 112 A.D. 745, 746, 99 N.Y.S. 85 (1906).

and concurrent jurisdiction is not possible.[20] General's undergrounding tariff was valid and pursuant to express WUTC authority. Concurrent jurisdiction is not possible since General's tariff conflicts with Bothell's subsequently enacted ordinances.

Such conflicts generally are resolved in favor of the public service commission.[21] One authoritative text acknowledges the rights of a municipality to modify the terms of a franchise by exercising its police power, but adds that a municipality cannot, under the guise of police regulations, usurp the functions of a state public service commission.[22] Recent cases from other jurisdictions echo this observation.[23]

The WUTC has authority to adopt regulations regarding the rates, services, facilities and practices of telephone companies. It adopted a valid regulation regarding facilities and practices of such companies, and General filed a tariff in response to that regulation, which became law. Whether seen as contractual or police power exercises, Bothell's subsequent ordinances do not have the authority to preempt that tariff. Those portions of the Bothell and Redmond ordinances that conflict with General's tariff are thus rendered null and void.[24] The Court of Appeals decision granting summary judgment to the Cities of Bothell and Redmond is reversed.

---

[20]*See Seattle Elec. Co. v. Seattle,* 78 Wash. 203, 138 P. 892 (1914).

[21]*See* 3 C. Antieau, *Municipal Corporation Law* § 29.19, at 29–66 (1983); *Duke Power Co. v. High Point,* 22 N.C. App. 91, 100, 205 S.E.2d 774 (1974).

[22]12 E. McQuillin, § 34.74, at 180.

[23]*See Craig v. Public Utils. Comm'n,* 656 P.2d 1313, 1317 (Colo. 1983); *Union Elec. Co. v. Crestwood,* 499 S.W.2d 480, 482–83 (Mo. 1973); *Chickasha v. Arkansas La. Gas Co.,* 625 P.2d 638, 641 (Okla. Ct. App. 1981).

[24]12 E. McQuillin, § 34.09, at 28; § 34.74, at 180. *See also* 12 E. McQuillin, § 34.149, at 316; *Union Elec.,* at 483–84.

Issue Two.

Conclusion. Requiring Bothell to pay for undergrounding aerial telephone facilities does not render it an unconstitutional "gift" by Bothell because consideration for such payment exists and a donative intent does not.

Washington Const. art. 8, § 7, prohibiting cities from giving gifts to private parties, reads as follows:

> Credit Not To Be Loaned. No county, city, town or other municipal corporation shall hereafter give any money, or property, or loan its money, or credit to or in aid of any individual, association, company or corporation, except for the necessary support of the poor and infirm, or become directly or indirectly the owner of any stock in or bonds of any association, company or corporation.

As we have held, for purposes of Const. art. 8, § 7, a gift is a transfer of property without consideration and with donative intent.[25] "Receipt of valuable consideration assures that a transaction is not a gift."[26] In *Bellevue v. State,* 92 Wn.2d 717, 600 P.2d 1268 (1979), it was held that the City's reimbursement of its officials for restaurant tips was not a gift because the tips were payment for service rendered, and this contradicted any donative intent and provided adequate consideration.[27]

In the present case, the tariff requires that Bothell pay General for services rendered, *i.e.,* placing its facilities underground at the City's request. Consideration for the payment is present, and a donative intent is absent. The tariff does not violate Const. art. 8, § 7.

The foregoing rulings are dispositive of other issues raised by the parties.

The Court of Appeals is reversed and the trial court orders granting General's motions for summary judgment

---

[25]*Louthan v. King Cy.,* 94 Wn.2d 422, 428, 617 P.2d 977 (1980); *Bellevue v. State,* 92 Wn.2d 717, 720, 600 P.2d 1268 (1979).

[26]*Louthan,* at 428.

[27]*Bellevue,* at 721.

are reinstated.

DOLLIVER, C.J., and UTTER, BRACHTENBACH, DORE, PEAR-
SON, CALLOW, GOODLOE, and DURHAM, JJ., concur.