**CITY OF AUBURN, et al., Plaintiffs,**

v.

**U S WEST COMMUNICATIONS, INC., Defendant.**

**No. C98–5595FDB.**

United States District Court,
W.D. Washington,
at Tacoma.

Nov. 16, 1999.

Carol S. Arnold, Denise L. Stiffarm, Preston Gates & Ellis, Seattle, WA, Teresa Williams Gillespie, US West Communications, Seattle, WA, Judith A. Endejan, Williams, Kastner & Gibbs, Seattle, WA.

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, AND DENYING MOTIONS FOR PARTIAL SUMMARY JUDGMENT AND MOTION ON THE PLEADINGS ON DEFENDANT'S COUNTERCLAIMS

BURGESS, District Judge.

Traditionally, whenever city improvements required the displacement of telecommunications equipment sited on the city's right of way, telecommunications companies bore the expense of relocating the equipment. However, on February 21, 1996, U S West notified cities and counties in the State of Washington that it would no longer bear these relocation costs, and announced that cities and counties would have to pay such costs in the future. This dispute is ongoing:

> For example, when the City of Vancouver directed U S West to move an aerial line to accommodate a City street project, U S West responded by demanding

that the City agree to payment of $10,272.00 for the cost of relocating U S West facilities *before* work could be started. The letter accompanying the "Billing Proposal" to the City of Vancouver stated:

> Attached are two copies of our Billing Proposal. We must receive both copies, signed at the acceptance paragraph, *before the work described on the USWC proposal can be started.*

Declaration of William Whitcomb .... On·May 19, the Senior Civil Engineer for the City directed U S West to proceed with the relocation of the facilities, noting that construction on the street project would begin within a few weeks and that it was "imperative that your facilities be relocated in advance of our construction." ...

U S West's conduct threatened to delay the street improvement project, and on June 2, the Senior Civil Engineer wrote again to U S West requesting confirmation of U S West's schedule.... Finally, after attorneys intervened, U S West agreed to proceed with the relocation, but continued to insist on charging the City.

Plaintiffs' Memo in Support of SJ at 3–4.

The plaintiffs, various cities in Western Washington, seek[1] a declaratory judgment that the defendant is still obliged to pay such relocation costs. U S West filed counterclaims as to a handful of the plaintiff cities[2], which cities have recently passed ordinances seeking to regulate the telecommunications industry. The counterclaims would invalidate these ordinances.

There are a number of motions pending in this matter. The defendant, U S West, has moved for summary judgment of dismissal. The plaintiffs, various cities of Western Washington, likewise move for summary judgment. Further, U S West

---

1. While originally filed in state court, the defendant removed this action to the federal court on the basis of diversity jurisdiction.

2. Auburn, Olympia, Tacoma, Des Moines and University Place.

has moved for Judgment on the Pleadings on its counterclaims; the cities which are subject to the counterclaims have moved for partial summary judgment on the counter claims.

## I. CROSS–MOTIONS FOR SUMMARY JUDGMENT

Summary Judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law[3]. *Retail Clerks Union Local 648, AFL–CIO v. Hub Pharmacy, Inc.,* 707 F.2d 1030, 1033 (9th Cir.1983). The opposing party "may not rest on conclusory allegations, but must set forth specific facts showing that there is a genuine issue for trial." *Berg v. Kincheloe,* 794 F.2d 457, 459 (9th Cir.1986); *Lake Nacimiento Ranch Co. v. County of San Luis Obispo,* 841 F.2d 872, 876 (9th Cir.1987). "One of the primary purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> The plaintiffs point out that
>
> [t]he general rule is hornbook law: "A telegraph or telephone company is bound to make such changes as public convenience and necessity require *at its own expense.*" 86 C.J.S. Telecommunications § 49 (emphasis added).

Plaintiffs' Opposition to U S West's Motion for Summary J. at 7.

> [I]t is of the highest importance that the public health shall be safeguarded by all proper means. It would be unreasonable to suppose that in the grant to the gas company of the right to use the streets in the laying of its pipes it was ever intended to surrender or impair the public right to discharge the duty of conserving the public health. The gas company did not acquire any specific location in the streets; it was content with the general right to use them; and

when it located its pipes it was at the risk that they might be, at some future time, disturbed, when that state might require for a necessary public use that changes in location be made.

*New Orleans Gaslight Co. v. Drainage Com. of New Orleans,* 197 U.S. 453, 25 S.Ct. 471, 473, 49 L.Ed. 831 (1905) (holding that requiring the utility to relocate its pipes at its own expense did not constitute a legal injury).

Washington law is consistent:

> The company's other contention is that it is entitled to 'damages' from the city to the extent of the expense incurred in re-laying its pipes when necessitated by changes in street grades made upon the authority of the city.
>
> The principle of *damnum absque injuria* is an ancient one. It is applicable here. The city is not guilty of any tort; no wrongful act is being done. The necessity and convenience of the public is being served. No property is taken; no title is disturbed. The authorities are well-nigh unanimous that in such a case the city has a paramount right to serve the public necessity and convenience without payment for individual losses therefrom. Many roadside businesses have been destroyed by the rerouting of traffic or changes in the location of streets and highways.
>
> The paramount right of the city, in such case as this, precludes the availability of any remedy to the company. *Damnum absque injuria.*

*Western Gas Co. v. Bremerton,* 21 Wash.2d 907, 909, 153 P.2d 846 (1944).

### a. PRE–STATEHOOD GRANT

■ U S West contends first that it is subject to a historical grant, characterized as a "constitutional contract" (Defendant's Memo in Support of SJ to Dismiss at 4), stemming from its providing telecommuni-

---

3. "The moving party is 'entitled to judgment as a matter of law' [when] the nonmoving party has failed to make a sufficient showing on an essential element of her case with re- spect to which she has the burden of proof." *Celotex v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53 (1986).

cation services prior to statehood. The drafters of the Washington Constitution recognized the important role of telecommunications: the Washington Constitution, Article XII, § 19, provides that

> Any association or corporation ... shall have the right to construct and maintain lines of telegraph and telephone within this state .... The legislature shall, by general law of uniform operation provide reasonable regulations to give effect to this section.

Pursuant to this provision, the Washington legislature, in its first session, passed an act pertaining to telephone and telegraph companies, now codified as RCW 80.36.040:

> Any telecommunications company ... doing business in this state, shall have the right to construct and maintain all necessary lines of telegraph or telephone for public traffic along and upon any public road, street or highway, ... and may erect poles, posts, piers or abutments for supporting the insulators, wires and any other necessary fixture of the lines, in such manner and at such points as not to incommode the public use of the ... highway.

However, I cannot agree that this recognition of a right to erect and maintain telecommunications equipment along the public right of way cedes any unstated rights or creates an exception to the general rule; I do not see that there is a "constitutional contract" which overcomes the general rule that utilities should bear the expense of relocation of their equipment when required for the convenience of the public. The plaintiffs correctly note that even prior to statehood, the federal Post Roads Act required telegraph companies to maintain their lines so as "not to obstruct ... or interfere with the ordinary travel on such military or post roads." U.S.Rev.Stats. § 5263 (14 Stat. 221). The territorial legislature similarly provided that the right to construct telegraph lines was subject to the requirement that such lines "not unnecessarily obstruct[ ]" roads, streets, highways, etc. Territory of Washington, Private and Local Laws, Thir-

teenth Session 1866. The Washington Constitution, Article XII, § 19, itself provided for "reasonable regulations", and the first legislature recognized the right to erect telecommunications equipment only "in such manner and at such points as not to incommode the public use of the ... highway." Session Laws, 1889–90, Rem. Rev.Stat. § 11352.

### b. TARIFF

▉ As a public utility, U S West is extensively regulated by the state. U S West's rates, services, facilities and practices are under the regulation of the Washington Utilities and Transportation Commission ("WUTC"). RCW 80.01.040(3). U S West is required to file with the WUTC a tariff, a schedule of rates and services. RCW 80.36.100. The WUTC may order changes. A tariff which is not changed by the WUTC becomes effective thirty days after filing, RCW 80.36.110, and has "the force and effect of law." *General Telephone Co. v. Bothell*, 105 Wash.2d 579, 585, 716 P.2d 879 (1986).

Since 1968, U S West (or its direct predecessor) has filed tariffs with the WUTC which apportioned relocation expenses. The current tariff (WN U–31) states:

> When relocation or aerial to underground conversion of existing facilities is requested or required by law, the cost of constructing the new or removing the old facilities will be borne by the customer or others requesting the relocation or conversion.

Defendant's Memo in Support of SJ at 4. U S West argues that this provision shifting the expense of relocation to "others requesting the relocation" applies to cities, and that the tariff, having the "force and effect of law", trumps the general rule requiring utilities to bear expenses for relocation.

There is some degree of merit to the plaintiffs' argument that "[c]ities—not the WUTC—regulate U S West's use of City streets and rights-of-way." Plaintiffs' Op-

position to Motion for SJ at 10. To say that a well-recognized legal principle, like the allocation of expenses to utilities for the cost of equipment relocation in public right of way, may be abrogated by the general tariff enunciation that relocation expenses would be borne "by others" requesting relocation, would be to render state law unduly precarious.[4] The reasoning of the Colorado Supreme Court in *U S West v. City of Longmont*, 948 P.2d 509 (Colo.1997)(*en banc*) (holding that a pre-existing tariff did not preempt municipal ordinance requiring "undergrounding" of utility lines) is persuasive.

U S West relies heavily upon *General Telephone v. Bothell*, 105 Wash.2d 579, 716 P.2d 879 (1986). *Bothell* may be distinguished; I agree with the plaintiffs that the issue of tariff preemption of the state common law was not squarely before the Washington Supreme Court in *Bothell*. In light of the larger body of state law pertaining to the "paramount right" of cities to act to protect public necessity and convenience (*Western Gas Co. v. Bremerton, supra; State v. Public Utility Dist. No. 1*, 55 Wash.2d 645, 349 P.2d 426 (1960)), I must agree that Tariff WN U–31 does not preempt the cities' right to require the defendant to pay for relocation of equipment on the public right of way.

## II. Counterclaims

■ Following the passage of the Federal Telecommunications Act of 1996 ("FTA"), the Cities of Auburn, Olympia, Tacoma, Des Moines and University Place passed various ordinances governing the telecommunications companies. The defendant filed counterclaims against these cities, contending that these ordinances violated the FTA, and were preempted. These "Counterclaim Cities" filed two motions for partial summary judgment on the counterclaims; the "Motion for Partial Summary Judgment on Counterclaim Re: Municipal Regulation of Rights of Way",

and the "Motion for Partial Summary Judgment on Counterclaim Re: Undergrounding Ordinances". At around the same time, the defendant moved for judgment on the pleadings as to its counterclaims.

I have been unable to detect a ripe dispute as to the counterclaims. The defendant has not demonstrated that any of the Counterclaim Cities have attempted to enforce their ordinances against it. I am unaware, for example, that any city has instructed the defendant that it must remove its equipment for failure to file a franchise application. Regardless of the persuasiveness of the defendant's argument, *see Bell Atlantic–Maryland v. Prince George's County*, 49 F.Supp.2d 805 (D.Md.1999 ), I decline to broadly review these ordinances for the purpose of determining (a) which particular provision of which ordinance offends the FTA, and (b) whether the entire ordinance needs to be invalidated despite the ordinances' severability clauses. That analysis would be better conducted following specific attempts by the Counterclaim Cities to enforce their telecommunications ordinances.

I should note that the City of University Place amended its telecommunications ordinance, and has moved to have the counterclaims against it dismissed on the basis of mootness. The defendant agreed at oral argument that it did not oppose this request.

It is hereby

ORDERED:

(1) That the plaintiffs' Motion for Summary Judgment is GRANTED;

(2) That the defendant's Cross–Motion for Summary Judgment of Dismissal is DENIED;

(3) That the plaintiffs' Motions for Partial Summary Judgment to Underground-

---

4. I might further note that the recent decision in *Pierce County v. U S West Communications*, Pierce County Superior Court Cause No. 97–2–08395–3, clearly concluded that a WUTC tariff did not overcome preexisting state statute regarding the right of counties to shift the cost of equipment relocation to telecommunications companies.

ing and Municipal Regulation of Rights of Way are DENIED as unripe;

(4) That the defendant's Motion for Judgment on the Pleadings on the Counterclaims is DENIED as unripe; and

(5) That the request of the City of University Place for dismissal of the defendant's counterclaims against it on the basis of mootness is GRANTED.