103 P.3d 1249 (2005)
SCOCCOLO CONSTRUCTION, INC., a Washington corporation, for the use and benefit of CURB ONE, INC., a Washington corporation, Respondent/Cross-Appellant,
v.
CITY OF RENTON, a municipal corporation, Appellant/ Cross-Respondent.
No. 51730-9-I.
Court of Appeals of Washington, Division One.
January 10, 2005.
John P. Mele, Roger Mykleburst, Ryan Swanson & Cleveland PLLC, Seattle, WA, Lawrence J. Warren, Warren Barber & Fontes PS, Renton, WA, for Appellant.
Jeffrey G. Poole, Scott A. Marks, Poole & Associates PC, Seattle, WA, for Respondent.

PUBLISHED IN PART
KENNEDY, J.
The City of Renton appeals the jury verdict and the trial court's order on prejudgment interest and attorney fees and costs in this contract dispute with Scoccolo Construction Company over damages for delays in the completion of a street widening project. Following this court's reversal of the trial court's earlier decision granting partial summary *1250 judgment to Renton,[1] the trial court ruled that because Renton had franchise agreements authorizing it to compel Puget Sound Power and Light and TCI Cable to relocate their utilities at their own expense during a street widening project such as this one, those franchisees were "persons acting for" Renton under RCW 4.24.360 as a matter of law. The trial court ruled, therefore, that a contract provision limiting Scoccolo's remedies for delays caused by utility companies was void. Renton argues, and we agree, that the trial court erred by ruling as a matter of law that the power and cable companies were "persons acting for" Renton within the meaning of RCW 4.24.360, by virtue of their franchise agreements with Renton.[2]

FACTS
Following a public bid process, the City of Renton awarded Scoccolo Construction Company, Inc., a contract to widen Park Avenue North, a main city street. The project involved removal and relocation of utility poles, lines, and related equipment by Puget Sound Power and Light, U.S. West Communications, and TCI Cable. The construction contract provided that Scoccolo would coordinate relocation efforts with the utilities, and included the following provision labeled TP 1-07.17: "No additional compensation will be made to the Contractor for reason of delay caused by actions of any utility company and the Contractor shall consider such costs to be incidental to the other items of the contract." Clerk's Papers at 164.
Renton had previously entered into a franchise agreement with Puget Sound Power giving Renton the authority to compel Puget to relocate utilities at Puget's cost and expense in public works projects such as the one here at issue. Renton also contracted with Puget Sound Power specifically for the Park Avenue North project to replace the existing overhead distribution power system with an underground system.
After the project was completed, Scoccolo filed suit against Renton claiming that the failure of Puget Sound Power, TCI Cable and U.S. West to complete their removal and relocation work in a timely manner delayed Scoccolo's work, and seeking money damages from Renton. Renton sought, and the trial court granted, partial summary judgment dismissing Scoccolo's "delay claims based on delays caused by utilities," as barred by the contract clause limiting additional compensation for reason of delay caused by actions of utility companies. The parties agreed to dismiss all remaining claims without prejudice under CR 41, in order to obtain appellate review of the partial summary judgment.
In Scoccolo Constr., Inc. v. City of Renton, 102 Wash.App. 611, 616-17, 9 P.3d 886 (2000) (Scoccolo I) this court determined that because, as pleaded, Scoccolo's claims were based on Renton's acts or failures to act, the contractual provision, even if valid, did not bar the claims, and reversed the summary judgment order.
Following Scoccolo I, Renton again sought partial summary judgment, this time purporting to "address only liability for the actions or inactions of Puget Power, U.S. West and TCI Cable and not what Renton may or may not have done." Clerk's Papers at 72. Renton argued that "the contract repeatedly, clearly and unequivocally places the costs arising from any utility delays on Scoccolo." Id. at 73. Renton argued that RCW 4.24.360 does not void the contract terms because the utilities were not Renton's agents, Renton did not have control over the utilities, and Renton's franchise and underground wiring agreements with Puget Sound Power did not create an agency relationship or allow Puget to act for Renton, or allow Renton to control Puget, and was simply entered in response to Washington Utilities and Transportation Commission requirements. Renton also argued that Scoccolo failed to present evidence that the utilities failed to perform their work at a time, in a sequence, or for durations that were different from Scoccolo's anticipation at *1251 the time it bid on the project or made its schedule.
In response, Scoccolo argued that this court's holding in Scoccolo I prevented summary judgment on the same issue, that the utilities were contractors acting for Renton, that RCW 4.24.360 rendered void the contractual bar to recovery based on delay of the utilities with which Renton had franchise agreements and contracts, and that material issues of fact remained regarding Scoccolo's scheduling of the project.
The trial court denied Renton's motions for summary judgment and reconsideration. By order filed June 10, 2002, the trial court determined:
Based upon the Franchise Agreement between the City of Renton and Puget Sound Power and Light (Puget Sound Energy), Puget Sound Power and Light was acting for the City of Renton on the Park Avenue Project for purposes of RCW 4.24.360 and, therefore, the provision of TP 1-07.17 in the Contract for the Park Avenue North Improvements precluding damages "for reason of delay caused by the actions of any utility company" is void as to Puget Sound Power and Light.
Clerk's Papers at 372.
The trial court later denied Renton's motions for partial summary judgment regarding the other utilities, determined that TCI was also acting for Renton based on a newly discovered franchise agreement, and determined that genuine issues of material fact remained as to whether Scoccolo's work was delayed.
At trial, the jury was instructed as follows:
The Court has determined that Puget Power and TCI were "acting for" the City of Renton. It is your duty to determine if U.S. West was "acting for" the City of Renton on the Park Avenue Project. US West was acting for the City of Renton if it was acting "in place of", "in the interest of", or "in favor of" Renton.
Instruction 12, Clerk's Papers at 939.
By way of answers to special interrogatories, the jury awarded Scoccolo $165,957 in damages for Scoccolo's breach of contract claim against Renton, and $259,576 for delay caused by the two utilities that the trial court had ruled were "acting for" Renton, for a total judgment of $425,533. The jury found that U.S. West was not acting for Renton.
Finding that the amounts awarded for "financing costs" were not supported by sufficient evidence, the trial court reduced the total award to $307,245, and then awarded prejudgment interest of $286,863.66, attorney fees of $332,493.03, and costs and expenses of $97,539.26, for a total judgment of $1,024,140.95. Renton appeals. Scoccolo cross-appeals.

ANALYSIS

Issue 1: Did the trial court properly rule as a matter of law that the power and cable companies were persons "acting for" Renton under RCW 4.24.360, by reason of the franchise agreements?
Renton contends that the trial court erred in ruling as a matter of law that Puget Sound Power and TCI were "persons acting for" Renton for purposes of RCW 4.24.360 by virtue of the franchise agreements between Renton and these utilities, such that the contractual bar to additional compensation for the delay of utilities was void as to Puget Sound Power and TCI. RCW 4.24.360 provides in pertinent part:
Any clause in a construction contract, as defined in RCW 4.24.370, [[3]] which purports to waive, release, or extinguish the rights of a contractor, subcontractor, or supplier to damages or an equitable adjustment arising out of unreasonable delay in performance which delay is caused by the acts or omissions of the contractee or *1252 persons acting for the contractee is against public policy and is void and unenforceable.
Emphasis added.
This court reviews questions of statutory interpretation de novo. State v. Bright, 129 Wash.2d 257, 265, 916 P.2d 922 (1996). We interpret statutes to give effect to the Legislature's intent. Cherry v. Municipality of Metro. Seattle, 116 Wash.2d 794, 799, 808 P.2d 746 (1991). To determine legislative intent, we look first to the language of the statute. Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 53, 905 P.2d 338 (1995). When statutory language is clear, we assume that the Legislature "meant exactly what it said" and apply the plain language of the statute. Duke v. Boyd, 133 Wash.2d 80, 87, 942 P.2d 351 (1997). An undefined term in a statute will be given its usual and ordinary meaning, and the court may use a dictionary definition to determine the usual and ordinary meaning of the term. Shoreline Community College v. Employment Sec., 120 Wash.2d 394, 842 P.2d 938 (1992). In ascertaining the meaning of a particular word in a statute, a court must consider both the statute's subject matter and the context in which the word is used. Chamberlain v. Dep't of Transp., 79 Wash.App. 212, 217, 901 P.2d 344 (1995).
Renton's franchise agreement with Puget Sound Power states in pertinent part:
Grantee agrees and covenants, at its cost and expense, to protect, support, temporarily disconnect, relocate or remove from any street any of its installations when so required by the City of Renton by reason of traffic conditions, public safety, street vacations, dedications of new rights of way and the establishment and improvement thereof, freeway construction, change or establishment of street grade, or the construction of any public improvement or structure by any Governmental agency acting in a Governmental capacity.
....
Notwithstanding any provision herein to the contrary, any excavations and installations by the Grantee in any of the public properties within the corporate limits of the City shall be done in accordance with such reasonable rules, regulations, resolutions and ordinances now enacted or to be enacted by the City Council, relating to excavations in public properties of the City, and under the direction and supervision of the City Traffic Engineer.
....
In case of the material failure by the Grantee, its successors or assigns, to comply with any of the provisions of this Ordinance, or if Grantee, its successors and assigns, do or cause to be done any act or thing prohibited by or in violation of the terms of this Franchise Ordinance, Grantor may elect to give not less than thirty (30) days' written notice of such violation and of its intention to revoke said Franchise if such violation is not corrected within such period, and upon the expiration of said period and the failure of the Grantee to correct such violation, the Grantee, its successors and assigns, shall forfeit all rights and privileges granted by this Ordinance and all of its rights hereunder shall cease and terminate, provided, that if Grantee has during said period made a diligent effort to correct such violation and if Grantee's failure to so correct the same shall be caused by circumstances beyond the reasonable control of Grantee, including, but not limited to, acts of God, labor disputes, material shortages, or order of governmental authority having jurisdiction, then Grantee's rights hereunder shall not so terminate, and Grantee may apply to the City for an extension of time for a reasonable period of time to correct such violations, which shall not be unreasonably withheld.
In addition to the other remedies provided herein, the City reserves and has the right to pursue any remedy to compel and force Grantee, its successors and assigns, to comply with the terms hereof and to furnish the services herein called for, and the pursuit of any right or remedy by the City shall not prevent the City from thereafter declaring the forfeiture for any reason herein stated after giving the required notice as specified in the immediately preceding paragraph, nor shall the delay of the City in declaring any forfeiture preclude it from thereafter doing so, unless *1253 the action of the City shall have prevented, caused or contributed materially to the failure to perform or do the act or thing complained of.
Clerk's Papers at 167, 169, 173-74.
Renton's franchise agreement with TCI states in pertinent part:
Whenever, in the sole opinion of the City, any of a franchisee's facilities or equipment need to be relocated or altered due to a construction or repair project by the City in a public way, a franchisee shall move or relocate said facilities or equipment within thirty (30) days from receiving written notice from the City.... Any relocation or alteration of a franchisee's facilities or equipment required under this Section shall be at the sole expense of a franchisee.
....
A. Default; Plan of Action: If a franchisee willfully violates or fails to comply with any of the material provisions of this franchise, the City shall give written notice to a franchisee of the alleged noncompliance of its franchise. A franchisee shall have forty five (45) days from the date of the notice of noncompliance to cure such alleged default or, if such default cannot be cured within forty five (45) days, to present the City with a plan of action whereby such default can be promptly cured.
B. Revocation; Recovery of Costs: If such default continues beyond the applicable dates agreed to for such cure, the City shall give a franchisee written notice that all rights conferred under this Chapter and its franchise may be revoked or terminated by the Council after a public hearing. A franchisee shall be entitled to not less than thirty (30) days' prior notice of the date, time and place of the public hearing. The City may elect, in lieu of the above and without any prejudice to any of its other legal rights and remedies, to obtain an order from the superior court having jurisdiction compelling a franchisee to comply with the provisions of the franchise and recover damages and costs incurred by the City by reason of a franchisee's failure to comply.
Clerk's Papers at 419, 425.
Certainly, the franchise agreements here at issue afforded Renton the power to compel Puget Sound Power and TCI to timely participate in the Park Avenue project at the utilities' expense, and reserved rights and remedies to Renton for any failure to act or for delay in action by the franchisees. Evidence at the trial showed that both franchisees were dilatory and that Renton failed to exercise its power to compel in connection with this project. We said in Scoccolo I, 102 Wash.App. at 616, 9 P.3d 886:
Scoccolo argued below that Renton should have exercised its contractual right to direct Puget to complete the work or to have others complete the work if Puget failed to perform, and that Renton breached its implied duty to cooperate with Scoccolo and facilitate the completion of the project. As pleaded, these theories are based upon the acts, or failures to act, of the City. We do not interpret the challenged contractual provision to bar these claims even if the provision is valid. The fact that the delays were contributed to by the utility companies does not shield Renton from potential liability based on its own contractual breaches.

Emphasis added. Thus, we were not required in Scoccolo I to address Scoccolo's argument that the franchisees were "acting for" Renton within the meaning of RCW 4.24.360, when they failed to timely relocate their facilities. We said:
The parties argue at length concerning the proper construction of RCW 4.24.360. We need not address most of these arguments, beyond noting that the statute by its plain language voids a particular type of contract clause which purports to prevent delay damage claims against contractees or persons acting on their behalf. The statute does not purport to create a new cause of action against contractees, or to subject them to liability for the conduct of others as to whom they have no cognizable legal responsibility.

Id. at 616-17, 9 P.3d 886, emphasis added.
Nothing in the franchise agreements, the "acting for" language in RCW 4.24.360, or *1254 the parties' briefing for this appeal persuades us that these pronouncements in Scoccolo I require reexamination, and they are applicable to the remainder of our analysis.
Renton argues that "acting for" can only refer to agents and independent contractors hired by the contractee. Scoccolo argues that the Legislature clearly intended something broader than agency because the bill that eventually became RCW 4.24.360 was originally drafted to void contract clauses that extinguish the rights of a contractor to recover for delays caused by "the contractee or the contractee's agents." SB 2466, 46th Legis., 1st Ext. Sess.[4] Before adopting the bill, the Senate changed "agents" to "persons acting for" the contractee. We can readily agree with Scoccolo that "persons acting for" a contractee seems, on its face, to be a somewhat broader category than "agent".
In Instruction 12, relating to the potential for liability of Renton for delays caused by U.S. West, the trial court used standard dictionary definitions of acting "for," i.e., "acting `in place of,' `in the interest of,' or `in favor of' Renton." Clerk's Papers at 939. Applying Instruction 12, the jury found that U.S. West was not acting for Renton, and that part of the verdict is not before us in this appeal or cross appeal. Accordingly, we are not required to review Instruction 12, as such. But presumably these are the same definitions that the trial court had in mind when it ruled as a matter of law that the two dilatory franchisees were "acting for" Renton by virtue of the franchise agreements  that is, presumably the trial court reasoned that by virtue of the franchise agreements themselves, or some of the content thereof, the two dilatory franchisees acted or failed to act "in place of, in the interest of, or in favor of" Renton, as a matter of law. But nothing in the franchise agreements supports this conclusion.
The trial court's ruling fails to take into consideration the nature and purpose of utility franchises.[5] A number of cases, none of which were cited to the trial court or to this court, are instructive. We will discuss two of them.
In State v. Public Utility Dist. No. 1 of Clark County, 55 Wash.2d 645, 349 P.2d 426 (1960) the City of Vancouver had granted a franchise to the predecessor of the PUD permitting the erection, constructing, and maintenance of an electric light, heat and power distribution system over and under its city streets, alleys, and highways. The franchise ordinance provided that Vancouver had the right to cause the grantee or its successors to move the location of any pole or arc light when such should be deemed for the public convenience, at the expense of the grantee. The ordinance also required the grantee, upon 10 days notice by Vancouver, to remove its poles and wires to accommodate improvements to the City's streets  and provided that if the grantee should refuse or neglect to do so, Vancouver could remove the utilities at the expense of the grantee. Finally, the ordinance provided that Vancouver, through its city council, retained the power and right to reasonably regulate the exercise of the franchise in the public interest. Id. at 646-47, 349 P.2d 426.
In 1952, the Washington highway commission, acting for the state and purporting to act "as the legal, implied and/or constructive agent of the City of Vancouver," asked the PUD to remove at its own expense those of its facilities that interfered with the construction of a new limited access highway. Id. at 647, 349 P.2d 426.[6] The PUD refused to act unless and until the State agreed to be responsible for the relocation costs. The State *1255 agreed to front the money, subject to its claim for reimbursement, and the project proceeded to completion. Eventually, the trial court entered judgment in favor of the PUD, and the State appealed. Id. at 647-48, 349 P.2d 426. Our Supreme Court reversed, noting that at common law, a
"grant, franchise, easement or other right accorded to a utility company by public authority, to maintain structures in public streets, is at all times subject to the police power of the sovereign, and unless expressly agreed to otherwise in the franchise, the company must, at its own expense, make such changes as the public convenience and necessity require, and it is bound to alter, remove, relocate, support and maintain a structure, when necessary to the city's carrying out a function in the interest of public health, safety or welfare[.]"
Id. at 649-50, 349 P.2d 426 (quoting Rhyne, Municipal Law 512 (1957)).
Thus, we learn that the franchise grant in Public Utility Dist. No. 1 of Clark County, which bore much in common with the franchise grants in the instant case, was entirely consistent with the common law of this and the overwhelming majority of other states. Both at common law and by virtue of the franchise ordinance, the Clark County PUD was required to pay the relocation costs  or Vancouver could do it and recover its costs  and Vancouver retained the right to reasonably regulate exercise of the franchise in the public interest. We conclude that like the franchise grant in the Clark County case, the grants here at issue are consistent with the common law of the state, and with the police powers by which cities provide for the public welfare.
Another case that is helpful to the understanding of utility franchises is City of Auburn v. Qwest Corp., 260 F.3d 1160 (9th Cir.2001), cert. denied, 534 U.S. 1079, 122 S.Ct. 809, 151 L.Ed.2d 694 (2002). The case deals with telecommunications utilities, but a reading of the cases generally reveals that the same common law principles and many similar statutory principles apply, regardless of the type of utility involved. In City of Auburn, one of the issues was whether the Federal Telecommunications Act of 1996 preempted certain provisions contained in utility franchise ordinances adopted by several of the cities that were not covered by Section 253(c) of the Act  a safe harbor provision that permits local regulations that "manage the public rights-of-way." 260 F.3d at 1177. The Ninth Circuit held that the federal statute did preempt the particular ordinances at issue because they had nothing to do with management of the public rights-of-way, and explained the reason for the safe harbor section of the Act:
"[S]ection 253(c) preserves the authority of state and local governments to manage public rights-of-way. Local governments must be allowed to perform the range of vital tasks necessary to preserve the physical integrity of streets and highways, to control the orderly flow of vehicles and pedestrians, to manage gas, water, cable (both electric and cable television), and telephone facilities that crisscross the streets and public rights-of-way.... [T]he types of activities that fall within the sphere of appropriate rights-of-way management ... include coordination of construction schedules, determination of insurance, bonding and indemnity requirements, establishment and enforcement of building codes, and keeping track of the various systems using the rights-of-way to prevent interference between them.
Id. at 1177 (quoting In re TCI Cablevision of Oakland County, Inc., 12 F.C.C.R. 21396 (F.C.C.1997) ¶ 103).
In the instant case, Scoccolo points to nothing in the franchise agreements that provides Renton with anything more than what is necessary to manage the public rights-of-way. The franchise grants appear to be entirely consistent with Washington's common law, which clearly permits cities to require franchise grantees to pay the costs of relocation of their facilities to accommodate street-widening projects, and which is entirely consistent with the power to compel such removal and relocations, and which is entirely consistent with the power of the city to accomplish such removal and relocations itself, if necessary, and to recover the cost of *1256 same from the utility, and which is entirely consistent with the reasonable exercise of the city's police powers to enforce such matters as excavation codes, building codes, and zoning codes, as well as to coordinate construction schedules.
We conclude that nothing about the nature and content of the franchise grants in this case authorizes or permits the utilities to "act for" Renton. Renton would be permitted under some circumstances to act for the franchisees  at their expense  but when acting or failing to timely act under the franchises, the grantees act for themselves  in order to preserve the conditions of their grants.
Accordingly, we reverse the trial court's ruling to the contrary, and remand for modification of the money judgment to reflect this ruling and those contained in the unpublished portions of this opinion.
A majority of the panel having determined that the remainder of this opinion lacks precedential value and will not be printed in the Washington Appellate Reports but will be filed for public record in accord with RCW 2.06.040, it is so ordered.
WE CONCUR: BAKER and COLEMAN, JJ.
NOTES
[1] Scoccolo Constr., Inc. v. City of Renton, 102 Wash.App. 611, 9 P.3d 886 (2000).
[2] Renton raises additional issues, which we address in the unpublished portion of this opinion. Scoccolo cross-appeals, and we also treat the cross-appeal in the unpublished portion of the opinion.
[3] RCW 4.24.370 provides: "Construction contract" for purposes of RCW 4.24.360 means any contract or agreement for the construction, alteration, repair, addition to, subtraction from, improvement to, or maintenance of, any building, highway, road, railroad, excavation, or other structure, project, development, or improvement attached to real estate, including moving and demolition in connection therewith."
[4] The parties have provided no additional legislative history to explain the change in wording by the Senate before the bill was adopted.
[5] In fairness to the trial court, the parties' briefing with regard to the "acting for" issue is abysmal. An understanding of the nature and purpose of utility franchises is crucial to the resolution of the issue on appeal; yet the parties have provided virtually no relevant briefing on the nature and purposes of utility franchises.
[6] The quoted language, when read in the context of the project at issue in the case, suggests one possible reason for the change made in the Senate to what is now RCW 4.24.360  implied or constructive agency is a broader category than legal agency alone. We are not required to decide this question, to resolve this appeal, but observe the distinction with interest.