[No. 77459-5.   En Banc.]
Argued June 6, 2006.   Decided October 26, 2006.

SCOCCOLO CONSTRUCTION, INC., Petitioner, v. THE CITY OF RENTON, Respondent.

*John S. Riper* and *Robert S. Marconi* (of *Stanislaw Ashbaugh, L.L.P.*), for petitioner.

*Roger A. Myklebust* and *Robert R. King* (of *Ryan Swanson & Cleveland, P.L.L.C.*) and *Lawrence J. Warren* (of *Warren Barber & Fontes, P.S.*), for respondent.

*John P. Ahlers* and *Leslie C. Clark* on behalf of Associated General Contractors of Washington, amicus curiae.

¶1 SANDERS, J. — RCW 4.24.360 invalidates as against public policy "no-damages-for-delay" clauses in construction contracts where the delay is caused by the contractee or "persons acting for" the contractee. Scoccolo Construction, Inc., sued the city of Renton (City) for damages stemming from delays in the completion of a street-widening project, including delays caused by utility companies operating under franchise agreements with the City.

¶2 The trial court awarded Scoccolo over $1,000,000 in damages and attorney fees. Both parties appealed to the Court of Appeals, which affirmed in part and reversed in part.

¶3 The primary issue before us concerns a contract between the parties which includes a "no-damages-for-delay" clause pertaining to delays caused by utility companies. Our inquiry is threefold: (1) whether the utilities were "persons acting for" the City under RCW 4.24.360, (2) whether Scoccolo is entitled to recover prejudgment interest on its award for delay damages, and (3) whether Scoccolo is entitled to an award for attorney fees and costs.

¶4 We hold Puget Sound Power and Light and TCI Cable were "acting for" the City under RCW 4.24.360, and therefore Scoccolo is entitled to recover damages for the delays attributable to the utilities. We also hold the trial court properly awarded Scoccolo prejudgment interest on its damage award. Finally, we hold Scoccolo is entitled to attorney fees and costs. Accordingly, the Court of Appeals is affirmed in part and reversed in part.

## FACTS AND PROCEDURAL HISTORY

¶5 The City awarded Scoccolo a contract to widen Park Avenue North from two to four lanes. The project necessitated relocating existing utility lines and power poles operated by Puget, TCI, and U S WEST Communications, Inc. (U S West). The contract between the City and Scoccolo provided:

> The Contractor shall be entirely responsible for coordination with the utility companies and arranging for the movement or adjustment, either temporary or permanent, of their facilities within the project limits.
>
> Existing utilities for telephone, power, gas, and television cable facilities shall be adjusted by the appropriate utility company unless otherwise noted in the Plans. . . .
>
> No additional compensation will be made to the Contractor for reason of delay caused by the actions of any utility company and the Contractor shall consider such costs to be incidental to the other items of the contract.

Clerk's Papers (CP) at 195.

¶6 Puget and TCI were operating under franchise agreements with the City, which reserved to the City the power to require the utilities to relocate their facilities at their expense in order to accommodate construction projects undertaken by the City. The City's franchise agreement with Puget stated:

> Grantee agrees and covenants, at its cost and expense, to protect, support, temporarily disconnect, relocate or remove from any street any of its installations when so required by the City of Renton by reason of traffic conditions, public safety, street vacations, dedications of new rights of way and the establishment and improvement thereof, freeway construction, change or establishment of street grade, or the construction of any public improvement or structure by any Governmental agency acting in a Governmental capacity.
>
> . . . .
>
> In addition to other remedies provided herein, the City reserves and has the right to pursue any remedy to compel and

force Grantee ... to comply with the terms hereof and to furnish the services herein called for . . . .

CP at 167, 174.

¶7 The City's franchise agreement with TCI stated:

5-17-13: **CONSTRUCTION IN RIGHT OF WAY**: Whenever, in the sole opinion of the City, any of a franchisee's facilities or equipment need to be relocated or altered due to a construction or repair project by the City in a public way, a franchisee shall move or relocate said facilities or equipment within thirty (30) days from receiving written notice from the City. . . . Any relocation or alteration of a franchisee's facilities or equipment required under this Section shall be at the sole expense of a franchisee. . . .

. . . .

5-17-33: **REVOCATION FOR CAUSE:**

A.   Default; Plan of Action: If a franchisee wilfully violates or fails to comply with any of the material provisions of this franchise, the City shall give written notice to a franchisee of the alleged noncompliance of its franchise. A franchisee shall have forty five (45) days from the date of notice of noncompliance to cure such alleged default or, if such default cannot be cured within forty five (45) days, to present to the City a plan of action whereby such default can be promptly cured.

B.   Revocation; Recovery of Costs: If such default continues beyond the applicable dates agreed to for such cure, the City shall give a franchisee written notice that all rights conferred under this Chapter and its franchise may be revoked or terminated by the Council after a public hearing. A franchisee shall be entitled to not less than thirty (30) days' prior notice of the date, time and place of the public hearing. The City may elect, in lieu of the above and without any prejudice to any of its other legal rights and remedies, to obtain an order from the superior court having jurisdiction compelling a franchisee to comply with the provisions of the franchise and recover damages and costs incurred by the City by reason of a franchisee's failure to comply.

CP at 419, 425.

¶8 After completing the project, Scoccolo sued the City for breach of contract and delays caused by the utilities. Relying on the contractual language providing "no additional compensation will be made to the contractor for reason of delay caused by the actions of any utility,"[1] the City moved for partial summary judgment to dismiss all of Scoccolo's claims based on delays caused by utilities. Scoccolo argued the "no-damages-for-delay" clause was rendered unenforceable by RCW 4.24.360 and asserted the City had breached express and implied duties owed Scoccolo under the contract. The trial court granted the City's motion for partial summary judgment and dismissed with prejudice Scoccolo's claims based on delays caused by the utilities. The parties then moved to dismiss without prejudice their remaining claims under CR 41(a), and Scoccolo appealed the grant of the partial summary judgment directly to this court. The City cross-appealed the trial court's award of $10,000 in attorney fees.[2] We transferred the case to the Court of Appeals.

¶9 In a published opinion, Division One reversed and remanded. *Scoccolo Constr., Inc. v. City of Renton*, 102 Wn. App. 611, 9 P.3d 886 (2000) (*Scoccolo* I). The court concluded that because "[a]s pleaded, these theories are based upon the acts, or failures to act, of the City," the fact the delays were partially attributable to the utility companies "does not shield Renton from potential liability based on its own contractual breaches." *Id.* at 616. The court declined to determine whether RCW 4.24.360 invalidated the "no-damages-for-delay" clause, stating such a clause regarding utility companies, even if valid, "does not preclude a contractor from recovering damages from a contractee that are caused by the contractee—whether or not those damages

---

[1] CP at 195.

[2] The City requested $216,414.81 in attorney fees and costs, but the trial court limited its award to $10,000.00 for the "costs and fees associated with the summary judgment motion," CP at 53-55, because the City had failed to "meet its burden of demonstrating that its total fees, expenses and costs were in a reasonable range, let alone demonstrating that the specific number sought is appropriate." CP at 54.

are somehow related to a utility's actions or lack thereof." *Id.* at 619.

¶10 On remand the City again moved for summary judgment, requesting "an order determining that Renton is not liable for the acts or omissions of either [Puget], [U.S. West], or [TCI] that may have caused delay to [Scoccolo]."[3] The City argued the contract placed the burden and risk of any delays caused by utilities on Scoccolo and stated this provision was not invalidated by RCW 4.24.360 because the utilities were not owned by, were not acting for, and were not agents of the City. Scoccolo argued summary judgment was inappropriate because (1) the Court of Appeals held Scoccolo could recover against the City, (2) the utilities were contractors acting for the City, (3) RCW 4.24.360 voided the contractual provision limiting delay damages, and (4) material issues of fact remained. The trial court denied the City's motion for summary judgment and its motion for reconsideration, ruled Puget was "acting for" the City for purposes of RCW 4.24.360, and consequently voided the contractual "no-damages-for-delay" provision as to Puget.

¶11 Subsequently the City moved for partial summary judgment declaring U S West and TCI were not "acting for" the City for the purposes of the statute. Scoccolo argued the two utilities were "acting for" the City under the same theories which applied to Puget. Following the disclosure of a franchise agreement between the City and TCI, the City withdrew the part of its motion pertaining to TCI, and the trial court determined TCI was acting for the City. The trial court then denied the City's motion.

¶12 At trial, the court instructed the jury:

The Court has determined that Puget Power and TCI were "acting for" the City of Renton on the Park Avenue Project. It is your duty to determine if US West was "acting for" the City of Renton on the Park Avenue Project. US West was acting for the City of Renton if it was acting "in place of," "in the interest of," or "in favor of" Renton.

CP at 939 (Instruction 12).

---

[3] CP at 67 (alterations in original).

¶13 The jury determined U S West was not acting for the City and awarded Scoccolo $165,957 for its breach of contract claim against the City and $259,576 for the delays caused by Puget and TCI. The trial court excluded the amounts awarded for financing costs, reducing the award to $307,245.00, and awarded prejudgment interest of $286,863.66, attorney fees of $332,493.03, and costs and expenses of $97,539.26, for a total judgment of $1,024,140.95.

¶14 Both parties appealed. The City challenged, inter alia, the trial court's determination Puget and TCI were "acting for" the City and the award of prejudgment interest and attorney fees. The Court of Appeals affirmed in part and reversed in part. In the published part of the opinion, the court reversed the trial court's ruling Puget and TCI were "acting for" the City. The court reaffirmed its earlier conclusion, "[t]he statute does not purport to create a new cause of action against contractees, or to subject them to liability for the conduct of others as to whom they have no cognizable legal responsibility," *Scoccolo* I, 102 Wn. App. at 616-17, and held "nothing about the nature and content of the franchise grants in this case authorizes or permits the utilities to 'act for' Renton." *Scoccolo Constr., Inc. v. City of Renton*, 125 Wn. App. 150, 165, 103 P.3d 1249 (2005) (*Scoccolo* II). In the unpublished part of the opinion, the court upheld the award of prejudgment interest and attorney fees.

¶15 We granted review of the Court of Appeals, holding that Puget and TCI were not "acting for" the City and its decision to affirm the award of prejudgment interest and attorney fees. *Scoccolo Constr., Inc. v. City of Renton*, noted at 156 Wn.2d 1030 (2006).[4]

---

[4] The Court of Appeals also (1) found no abuse of discretion in allowing Scoccolo to assert a direct cost damages claim, (2) affirmed deeming Scoccolo's pleadings regarding its breach of contract claims amended pursuant to CR 15(b), (3) affirmed vacating the jury award of financing costs, and (4) affirmed the trial court's

## ANALYSIS

### A. RCW 4.24.360

¶16 The legislature enacted RCW 4.24.360 in the wake of two appellate court decisions upholding "no-damages-for-delay" clauses: *Christiansen Bros., Inc. v. State*, 90 Wn.2d 872, 586 P.2d 840 (1978); *Nelse Mortensen & Co. v. Group Health Coop.*, 90 Wn.2d 843, 586 P.2d 469 (1978). In *Christiansen Brothers* a contractor challenged a "no-damages-for-delay" provision in his contract with the State, arguing, among other claims, that such provisions (1) may fail their essential purpose, (2) may be unconscionable, (3) may allow public agencies to contract away their negligence, (4) are bid inflators, and (5) are against legislative intent. We rejected all five arguments and held the provision[5] was not against public policy. In *Mortensen* we upheld a "no-damages-for-delay" clause under similar circumstances, stating, "if it is determined the delays were within the contemplation of the parties no recovery is allowed." *Mortensen*, 90 Wn.2d at 845. A year later the legislature enacted RCW 4.24.360, which provides:

> Any clause in a construction contract . . . which purports to waive, release, or extinguish the rights of a contractor, subcontractor, or supplier to damages or an equitable adjustment arising out of unreasonable delay in performance which delay is caused by the acts or omissions of the contractee or persons acting for the contractee is against public policy and is void and unenforceable.

¶17 When interpreting any statute our primary objective is to "ascertain and give effect to the intent of the Legislature." *Nat'l Elec. Contractors Ass'n v. Riveland*, 138 Wn.2d 9, 19, 978 P.2d 481 (1999). "In order to determine legislative intent, we begin with the statute's plain lan-

---

decision to disallow certain expenses claimed by Scoccolo. However, neither party has raised these issues, and they are not before us.

[5] Article 17 of the *Christiansen Brothers* contract stated: " 'In no event shall any delays or extensions of time be construed as cause or justification for payment of extra compensation to the Contractor.' " 90 Wn.2d at 874.

guage and ordinary meaning." *Id*. Plain language does not require construction. *State v. Thornton*, 119 Wn.2d 578, 580, 835 P.2d 216 (1992). The statute does not define the term "persons acting for the contractee." The trial court adopted the dictionary definition of "for," instructing the jury U S West was acting for the City "if it was acting 'in place of,' 'in the interest of,' or 'in favor of' " the City. CP at 939 (Instruction 12). According to the City, "acting for" means agents and independent contractors hired by the contractee. Scoccolo asserts that approach is not supported by the legislative history of the statute, since that history indicates the original draft of RCW 4.24.360 referred to " 'the contractee or the contractee's agents' "[6] before the "persons acting for" language was adopted. Scoccolo maintains this fact means the legislature did not intend to confine the scope of the provision to only agency relationships.

¶18 The Court of Appeals reversed the trial court's ruling that Puget and TCI were "persons acting for" the City and remanded for corresponding modification of the judgment. The court analyzed the language of both franchise contracts and concluded they afforded the City the power to compel the utilities to perform the relocations at their expense. Noting the evidence established both utilities contributed to delays and that the City failed to exercise its power to compel, the court restated its *Scoccolo* I conclusions that the provision, even if upheld, would not insulate the City from liability for its own breaches and that the statute does not create a new cause of action against contractees based on the conduct of others. Addressing the meaning of "persons acting for the contractee," the court focused on the nature and purpose of utility franchises, citing our decision in *State v. Public Utility District No. 1 of Clark County*, 55 Wn.2d 645, 349 P.2d 426 (1960), where we explained:

> "In the absence of an express and definite provision to the contrary, a utility company maintains its structures and rights

---

[6] *Scoccolo* II, 125 Wn. App. at 161 (quoting S.B. 2466, 46th Leg., 1st Ex. Sess. (Wash. 1979)).

in a public street subject to the paramount right of the city to use its streets for all proper governmental purposes. A grant, franchise, easement or other right accorded to a utility company by public authority, to maintain structures in public streets, is at all times subject to the police power of the sovereign, and unless expressly agreed to otherwise in the franchise, the company must, at its own expense, make such changes as the public convenience and necessity require, and it is bound to alter, remove, relocate, support and maintain a structure, when necessary for the city's carrying out a function in the interest of public health, safety or welfare, and this is so, whether the city has fee title or a mere easement in the street."

*Id.* at 649-50 (quoting CHARLES S. RHYNE, MUNICIPAL LAW 512-13 (1957)).

¶19 The court stated, "Scoccolo points to nothing in the franchise agreements that provides Renton with anything more than what is necessary to manage public rights-of-way," *Scoccolo* II, 125 Wn. App. at 164, and concluded, "nothing about the nature and content of the franchise grants in this case authorizes or permits the utilities to 'act for' Renton." *Id.* at 165.

¶20 Scoccolo agrees the City had the power to compel the relocation of the utilities under both its police power and under the terms of its franchise agreements with Puget and TCI, as well as pursuant to the separate contract with Puget to convert the overhead distribution power system to an underground one as part of the project. Scoccolo argues the franchise agreements represent contracts[7] and consequently in requesting the relocation of the utilities, the City was not only exercising its police power but also demanding performance under a contract. According to Scoccolo the City's status would have been no different if it had retained a separate contractor to relocate the utilities. The City argues the franchise agreements simply allow it to regulate the placement of utility facilities in the right of way and

---

[7] *Gen. Tel. Co. v. City of Bothell*, 105 Wn.2d 579, 584, 716 P.2d 879 (1986) ("Franchises have the legal status of contracts.").

RCW 4.24.360 does not apply because the utilities were not "acting for" the City by virtue of the franchise agreements, which do not grant the City any authority beyond its inherent police power.

¶21 We find by virtue of their contracts with the City, Puget and TCI were "acting for" the City for the purposes of RCW 4.24.360. Under the terms of the franchise agreements, the City had the power to compel Puget and TCI to relocate their facilities at their own expense. The City did not assign any such authority to Scoccolo. Scoccolo's sole responsibility was to coordinate with the utilities. Scoccolo fulfilled this obligation: the City's project manager, Richard Evans, conceded in his deposition he had no reason to say Scoccolo did not properly carry out its duty to coordinate with the utilities.[8] As Scoccolo points out, by directing Puget and TCI to relocate their facilities, the City was not only exercising its police power over the right of way but also demanding performance under a contract. And as a matter of contract right, the role of Puget and TCI is indistinguishable from any other contractor the City may have hired: all would have been "acting for" the City by virtue of performing under a contract to relocate certain facilities for the purposes of a municipal improvement project.

¶22 The Court of Appeals observation the franchise agreements were "consistent with the common law of the state and with the police powers by which cities provide for the public welfare," *Scoccolo II*, 125 Wn. App. at 163, does not change the fact the City possessed the contractual right to compel the utilities to relocate their facilities. There is no basis in either the text of the statute or the cases cited by the City and the court below for concluding the utilities are not "acting for" the City when the City orders their facilities relocated as provided in the franchise contracts simply because the authority granted the City by those franchise contracts mirrors the City's police power over the right of

---

[8] CP at 2121.

way. Here, Scoccolo's performance was delayed by entities bound under contracts with the City to perform relocation tasks necessary for the timely completion of the project. Puget and TCI were therefore "acting for" the City.

## B. Prejudgment Interest Award

¶23 The City challenges the trial court's award of prejudgment interest to Scoccolo. Prejudgment interest may be awarded when the claim is liquidated. *Safeco Ins. Co. v. Woodley*, 150 Wn.2d 765, 773, 82 P.3d 660 (2004) (citing *Prier v. Refrigeration Eng'g Co.*, 74 Wn.2d 25, 32, 442 P.2d 621 (1968)). A claim is liquidated "where the evidence furnishes data which, if believed, makes it possible to compute the amount with exactness, without reliance on opinion or discretion." *Prier*, 74 Wn.2d at 32 (citing Charles T. McCormick, Handbook on the Law of Damages § 54 (1935)). A claim is unliquidated " 'where the exact amount of the sum to be allowed cannot be definitely fixed from the facts proved, disputed or undisputed, but must in the last analysis depend upon the opinion or discretion of the judge or jury as to whether a larger or a smaller amount should be allowed.' " *Hansen v. Rothaus,* 107 Wn.2d 468, 473, 730 P.2d 662 (1986) (quoting *Prier*, 74 Wn.2d at 33). " '[T]he existence of a dispute over the whole or part of the claim should not change the character of the claim from one for a liquidated, to one for an unliquidated, sum . . . .' " *Prier*, 74 Wn.2d at 33 (emphasis omitted) (quoting McCormick, *supra*, § 54). The award of prejudgment interest is reviewed for abuse of discretion. *Kiewit-Grice v. State*, 77 Wn. App. 867, 872, 895 P.2d 6 (1995).

¶24 The City argues Scoccolo's claim was not liquidated because the jury did not award the damage amount requested by Scoccolo, $935,433.27, or the amount argued by the City, $364,904.00, but rather $425,533.00. According to the City, the fact the jury awarded this sum necessarily means the jury exercised some degree of discretion and therefore the claim is unliquidated. To bolster its argument the City cites to *Kiewit-Grice*, where the court stated, "[i]t is

clear that the jury did not accept [plaintiff's] figure. Thus, it cannot be said that the jury did not exercise any opinion or discretion in reaching its award." *Id.* at 873. In *Kiewit-Grice* the contractor sued the Department of Transportation, alleging the department breached the construction contract by providing defective concrete specifications for the project, forcing Kiewit-Grice to perform additional repair work at substantial expense. The department challenged the reasonableness of the claimed expenditures, including providing expert testimony, and the court agreed the award of prejudgment interest was improper. *Id.* at 874.

¶25 However, as noted by the Court of Appeals, in this case the City did not challenge the reasonableness of the expenses submitted by Scoccolo. Furthermore, " 'the sum is still "liquidated" . . . even though the adversary success-fully challenges the amount and succeeds in reducing it.' " *Prier*, 74 Wn.2d at 33 (quoting McCormick, *supra*, § 54). The trial court properly awarded Scoccolo prejudgment interest.

## C. Attorney Fees and Costs

¶26 Paragraph 5 of the contract between the parties provided, "[c]ontractor agrees to pay all cost, expenses, and reasonable attorney's fees that may be incurred or paid by the City in the enforcement of any of the covenants, provisions and agreements hereunder."[9] The Court of Appeals ruled this provision applied in this case and, relying on RCW 4.84.330, concluded the implied prevailing party provision was reciprocal.[10] The court held Scoccolo was the

---

[9] CP at 1026.

[10] RCW 4.84.330 provides:

In any action on a contract or lease entered into after September 21, 1977, where such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, *whether he is the party specified in the contract or lease or not,* shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

(Emphasis added.)

prevailing party below and affirmed the award of attorney fees. Finally, the court also awarded Scoccolo attorney fees for that portion of the appeal it successfully defended. The final question before us is whether Scoccolo is entitled to attorney fees and costs.

¶27 The City first argues paragraph 5 of the parties' contract does not provide for fees and costs in a direct action between the City and Scoccolo. According to the City, it only serves to entitle the City to attorney fees and costs in the event the City becomes a party in a suit between Scoccolo and a third party. We disagree. As noted by the Court of Appeals, the language of the provision refers to enforcement of the contract's provisions, and since they can be enforced only against a party to the contract, it follows it applies in the instant case.

¶28 The City also asserts the award of attorney fees and costs was improper because Scoccolo was not the prevailing party. "[A] prevailing party is generally one who receives a judgment in its favor." *Schmidt v. Cornerstone Invs., Inc.*, 115 Wn.2d 148, 164, 795 P.2d 1143 (1990). "If neither wholly prevails, then the determination of who is a prevailing party depends upon who is the substantially prevailing party, and this question depends upon the extent of the relief afforded the parties." *Riss v. Angel*, 131 Wn.2d 612, 633, 934 P.2d 669 (1997) (citing *Marassi v. Lau*, 71 Wn. App. 912, 916, 859 P.2d 605 (1993); *Rowe v. Floyd*, 29 Wn. App. 532, 535 n.4, 629 P.2d 925 (1981)). Here, Scoccolo secured a verdict against the City for breach of contract and on the question of the City's liability for delays caused by utilities. Under these circumstances an award of attorney fees was warranted.

## CONCLUSION

¶29 Under the terms of its franchise agreements with Puget and TCI, as well as its separate agreement with Puget regarding this project, the City possessed the authority to have the utilities relocate their facilities. When Puget

and TCI acted pursuant to the City's commands, they were "acting for" the City for the purposes of RCW 4.24.360. We therefore hold the trial court did not err in so finding. We also affirm the award of prejudgment interest and attorney fees and costs. Finally, we award Scoccolo attorney fees and expenses on appeal pursuant to RAP 18.1(b).

ALEXANDER, C.J., and C. JOHNSON, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶30 MADSEN, J. (concurring) — As noted by the majority, RCW 4.24.360 provides that any clause in a construction contract that "purports to waive, release, or extinguish the rights of a contractor . . . to damages or an equitable adjustment arising out of unreasonable delay in performance which delay is caused by the acts or omissions of the contractee or persons acting for the contractee is against public policy and is void and unenforceable."

¶31 At issue in this case is whether the clause in this construction contract that bars Scoccolo from recovering additional compensation because of delay caused by any utility company is void under this statute. More particularly, at issue is whether, in the circumstances of this case, Puget Sound Power and Light and TCI Cable "acted for" the city when they removed and relocated their facilities in the course of the street widening project. Unfortunately, what is not at issue is the general meaning of "acting for." Thus, this court cannot address the important question of whether the instructions given in this case correctly stated the law.

¶32 Below, the parties disputed what it means for a person to "act for" a contractee. The city argued that the term encompasses only legal "agents" of the contractee. Scoccolo contended that the legislature intended a broader meaning. At trial the court accepted Scoccolo's position and instructed the jury that "acting for" means "acting in place of, in the interest of, or in favor of" the city. For purposes of review, the Court of Appeals accepted the trial court's definitional instruction, which reflected Scoccolo's position.

*Scoccolo Constr., Inc. v. City of Renton,* 125 Wn. App. 150, 161, ¶20, 103 P.3d 1249 (2005). This instruction is not challenged here. Accordingly, the trial court's broad definition of "acting for" is the law of the case.

¶33 Under a different definition of "acting for," I might agree with the Court of Appeals that the utilities did not "act for" the city simply because, under their franchise agreements with the city, they could be compelled at their expense to relocate their facilities to accommodate city street widening projects. Certainly the utilities, when they relocate facilities pursuant to their franchise agreements, "act for themselves—in order to preserve the conditions of their grants," as the Court of Appeals observed. *Id.* at 165, ¶ 27. But, given the broad definition of "acting for" in the jury instruction as acting "in the interest of" or "in favor of" the city and given that the instruction is law of the case, it does not seem a stretch to say that any work done by the utilities to advance the city's project is done in the city's interest and, thus, "for" the city. Accordingly, I concur in the result reached by the majority.